[No. 23435. Department One. January 18, 1932.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRIST
JIMAS, *Defendant*, FIDELITY & DEPOSIT COMPANY
OF MARYLAND, *Appellant*.[1]

*Williams & Cornelius,* for appellant.

*Chas. W. Greenough, Frank Funkhouser,* and *Louis
F. Bunge,* for respondent.

MITCHELL, J.—Christ Jimas was charged by an in-
formation filed in the superior court for Spokane
county with the crime of being a jointist. He caused
to be filed in the case a bail bond or recognizance ex-
ecuted by the Fidelity & Deposit Company of Mary-
land. He was found guilty of the crime for which he
was prosecuted, and was notified to appear for sen-
tence on November 30, 1929, but failed to do so, having
fled from the state. An order was entered by the court
on December 10, 1929, declaring the bond or recogni-
zance forfeited, and on February 10, 1930, the surety
paid into court $1,515, the amount of the penalty of the
bond with accrued interest.

[1]Reported in 7 P. (2d) 15.

On December 10, 1930, one year after the order of forfeiture of the recognizance, the surety company filed a petition to vacate the order of forfeiture, and that the penalty thereof, theretofore paid to Spokane county and the state of Washington, be refunded to the surety. An answer was filed to the petition. Trial, without a jury, resulted in findings and conclusions upon which judgment was entered against the surety company denying its petition, from which judgment this appeal has been taken.

The testimony has not been brought up, appellant being satisfied with the findings entered by the trial court. There appears to have been a business arrangement between what is spoken of in the record as the Spokane Bonding Company and the Fidelity & Deposit Company of Maryland, by which the Spokane Bonding Company procured business of providing bail bonds in criminal cases in the courts, the bonds to be written by and in the name of the Fidelity & Deposit Company of Maryland, with the understanding that the compensation received was to be divided between the two companies, and that the appellant company should defend and prosecute in the courts all actions with reference to such business. The finding upon this subject is as follows:

"That an agreement existed between the Fidelity and Deposit Company of Maryland and said Spokane Bonding Company, wherein and whereby the Fidelity and Deposit Company of Maryland actually executed and filed in the courts bail bonds for business procured by said Spokane Bonding Company; and the compensation for writing said bonds being divided upon some basis between the two said companies; and it was further agreed that the Fidelity and Deposit Company of Maryland was required to defend and prosecute in the courts any actions with reference to any of said business; and that, in furtherance of said agreement, the

Fidelity and Deposit Company of Maryland has brought this proceeding as a trustee for said Spokane Bonding Company.''

Further findings were to the effect that neither the court nor prosecuting attorney knew that the Spokane Bonding Company was the true principal or in any manner connected with the bail bond in this case, that the order declaring the bond forfeited was entered on December 10, 1929, and that on February 10, 1930, the appellant paid to the clerk $1,515 as penalty and interest under the judgment of forfeiture. That there was no collusion between the appellant and the defendant in the criminal case; that the Spokane Bonding Company proceeded to find the defendant, upon learning of his leaving the state, and that the two companies located him in Tonopah, Nevada, in November, 1930, and returned him to the Spokane county jail with the assistance of a deputy sheriff acting in his official capacity, but whose traveling expenses to and from Tonopah were paid by the bonding companies, and that $410 were spent in the apprehension and the return of the defendant to the county jail. Intermingled in the court's conclusions is a finding of fact, stated to be a fact, that both companies were compensated, and that the appellant had been fully repaid by the Spokane Bonding Company the $1,515 appellant had paid on the judgment of forfeiture of the bond; also, the further fact that the money forfeited had already been distributed to public funds, one of which was a state fund. The conclusion was that the appellant was not entitled to any relief.

We have no special statute covering the precise situation presented in this case. Rem. Comp. Stat., §§ 2232 and 2233, provide for a stay of execution on a judgment forfeiting a recognizance for sixty days; and that, if the defendant for whom the recognizance was

given shall be produced in court before the expiration of the sixty days, the judgment of forfeiture may be vacated on such terms as may be just and equitable.

In *State v. Johnson,* 69 Wash. 612, 126 Pac. 56, where the defendant surrendered herself to her bondsmen, evidently uncompensated bondsmen, who delivered her into court within the sixty days, it was held on appeal that the bail money theretofore ordered forfeited by the trial court should have been returned to the bondsmen; and it was further held to be the policy of this statute to encourage the giving of bail in proper cases.

In *State v. Jackschitz,* 76 Wash. 253, 136 Pac. 132, it was held that the sixty day statute requires, almost as a matter of right, that a judgment shall be vacated within the sixty day period, without limiting the common law power of the court in proper cases; and it was further held that the trial court did not abuse its discretion in ordering money returned to the bondsmen, manifestly uncompensated, where the defendant voluntarily surrendered more than sixty days after judgment of forfeiture; that is, the sixty day statute did not limit the trial court's power to exercise discretion in the matter, and therefore the trial court was sustained in its discretional judgment.

*State v. Olson,* 127 Wash. 300, 220 Pac. 776, was a case of a private uncompensated surety and a prompt voluntary surrender of the defendant. There the trial court ordered one-half of the bail money, which was all that remained in the county treasury, to be returned to the bondsman. That order was affirmed upon the ground of its being a discretional judgment. That case declares the rule applicable in cases of this sort to be as follows:

"The return of the bail is made to rest, in the code, upon such terms as shall be just and equitable, and this court in *State v. Johnson,* 69 Wash. 612, 126 Pac. 56,

and *State v. Jackschitz,* 76 Wash. 253, 136 Pac. 132, has said that the order of the court 'will not be reversed on appeal except for a manifest abuse of discretion,' following the general rule as announced in 3 R. C. L. 63, to the effect that in 'the absence of evidence of flagrant abuse the appellate court will not interfere.' While it might have been entirely proper and even more appropriate to have set aside the entire forfeiture, still, this court cannot say that there was a 'manifest' or 'flagrant' abuse of discretion. Recognizing the encouragement which the law accords to the giving of bail and the return of fugitives to serve their sentences, and the encouragement which should be afforded vigilant and thrifty bondsmen in assisting in the thorough administration of the law's penalties, still, as we have indicated, the return of the bail money is a matter in which the trial court has a wide latitude for the exercise of its judgment, and we are not prepared to say that it was improperly exercised in this case.''

The test in such cases is not alone one of time, whether prompt or otherwise; nor good faith, or the lack of it; nor compensation, or lack of it, to the bondsmen or surety; nor whether there are organized, undisclosed principals in procuring the business of furnishing bail; nor distribution, or lack of it, of the money forfeited to public funds, some of which funds may not be represented by the county authorities. On the contrary, the test is the judicial discretion of the trial judge, who, in formulating and arriving at his judgment, may look to all such things, if in the case, and others, if there are any, with the understanding, as stated in *State v. Olson,* 127 Wash. 300, 220 Pac. 776, quoting from 3 R. C. L. 63, that in ''the absence of evidence of flagrant abuse the appellate court will not interfere.''

To like effect, as are our cases concerning the discretion of the trial court, is the decision of the United

States circuit court of appeals in *Henry v. United States,* 288 Fed. 843. That was a case of a paid surety and a defendant who had fled the jurisdiction, forfeiture of the bail bond entered, apprehension and return into custody of the defendant by the surety, in which the trial court's refusal to vacate the forfeited bail was affirmed. The court referred to a statute involved which had to do with the *willful default of the party* as separate and distinct from the conduct of the surety, and said:

"We recognize the force of the plea made by a surety who helps apprehend the fleeing accused, but we are confronted with a question of statutory construction and not one of legislative wisdom."

Then, in further consideration of the case and outside of the statute, the court said:

"Nor can we say upon the record that the trial judge abused his discretion in this case. Obviously this court is not in the same position as the trial court. We are not exercising the discretion, but merely reviewing the trial judge's action, to determine whether he abused his discretion.

"Defendant admits that he signed the bond for $100, charging the accused one-tenth of the amount of the bond. Whether, under these circumstances, the trial judge should refuse to relieve a surety who for gain engages in the bail bond business involves the exercise of discretion, which we are not justified in reversing because of any alleged abuse."

In the case of *Hickey v. State,* 150 Ark. 304, 234 S. W. 168, a defendant under bail fled, but was returned by his sureties after an order declaring the bail forfeited had been entered but before a formal judgment in the case. The trial court, exercising its discretion, refused to relieve the surety, and in affirming that judgment, the supreme court of the state said:

"The mere fact that the principal in the bond has been surrendered into custody by the bail does not en-

title the bail, as a matter of right, to a remission of the penalty of the bond. 6 Corpus Juris, 1053.

"The substance of the answer is nothing more than that appellant, at his own expense, returned the principal in the bond to custody, and, as before stated, this does not necessarily call for a remission of the penalty. It devolved upon appellant to establish facts to justify favorable action in the exercise of the discretion authorized by the statute, and, even if the facts set forth in the answer are accepted as true, that does not necessarily show an abuse of the court's discretion."

Other authorities might be cited emphasizing what appears to be the common rule of judicial discretion in such cases, whether so declared by statute or arising out of the common law.

In this case, we find in the findings, conclusions and judgment no abuse of discretion, manifest, flagrant or otherwise.

Affirmed.

PARKER, BEELER, and HERMAN, JJ., concur.

TOLMAN, C. J., (dissenting)—I recognize the wide discretion of the trial courts in such matters, and adhere to what is quoted by the majority from our previous decisions; but even so, since to vindicate the authority of the courts and to do justice is, after all, more important than any financial consideration, in my judgment, the diligence here shown in returning the convicted man for punishment should be encouraged, to the end that like diligence be exercised in the future under like circumstances.

In the light of its probable influence upon bonding companies in the future, it was, in my opinion, an abuse of discretion not to set aside the forfeiture to the extent of the money necessarily expended in returning the fugitive to serve his sentence.