[No. 28748. Department One. December 31, 1942.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN B.
VAN WAGNER, *Appellant*.[1]

*Ervin F. Dailey, Gordon W. Sweany, John J. Dunn,*
and *Reuben C. Carlson,* for appellant.

*Thor C. Tollefson* and *Theodore L. De Bord,* for
respondent.

MILLARD, J.—Defendant was charged by informa-
tion, filed July 23, 1941, in the superior court for Pierce
county, with the crime of attempted grand larceny. He
caused to be filed the same day bail bond, in the amount
of five thousand dollars, by the General Casualty Com-
pany of America through the Seattle office of the surety
under an arrangement with it by Joe Himelhoch for
the defendant. A premium in the amount of five hun-
dred dollars was paid for the bond to Himelhoch, who
retained two hundred dollars and remitted three hun-
dred dollars to the surety.

September 8, 1941, the cause was brought on for
assignment for trial, at which hearing defendant, who
was not present, was represented by his then counsel.

[1]Reported in 132 P. (2d) 359.

The cause was assigned for trial October 14, 1941, and bail was increased to twenty-five thousand dollars, which defendant was ordered to post within five days. September 15, 1941, on motion of the prosecuting attorney, an order for bench warrant for arrest of defendant, who had fled from the state, was entered.

Defendant failed to appear when the cause was called for trial October 14, 1941. On motion of the prosecuting attorney, an order was entered by the court declaring the five thousand dollar bond forfeited.

During the latter part of January, 1942 (more than ninety days subsequent to date of entry of order of forfeiture of the bond), the prosecuting attorney learned that defendant had been apprehended by the authorities in Oklahoma. No word was received by the court or the prosecuting attorney, from the surety or Himelhoch (the surety's representative), prior to apprehension of defendant in Oklahoma, that the surety or Himelhoch was interested in matter of apprehension or had made any effort to apprehend defendant, whose bond was increased to twenty-five thousand dollars September 8, 1941, and whose arrest on bench warrant as a fugitive from justice was ordered September 15, 1941.

After the departure of the extradition agent for Oklahoma to return defendant to this state, Joe Himelhoch, of whose interest in or connection with the cause or bail bond neither the court nor the prosecuting attorney was previously aware, offered to pay all expenses of extradition of defendant. Upon return of defendant to this state, his bail was increased to fifty thousand dollars, in default of which he remained in Pierce county jail until taken therefrom to the state penitentiary following entry, February 27, 1942, of judgment and sentence on defendant's plea of guilty of the crime of grand larceny.

March 7, 1942, Joe Himelhoch filed petition praying vacation of the order entered October 14, 1941, forfeiting bond and to exonerate and discharge surety. In addition to finding facts recited above, the trial court found, only on the testimony of Himelhoch and his request for such finding, that Himelhoch was induced to obtain the bond by defendant and his friends under another agreement whereby defendant agreed to report at regular intervals to Joe Himelhoch and keep him informed as to his whereabouts, for a consideration of five hundred dollars, of which Himelhoch paid three hundred dollars to the General Casualty Company; that defendant fulfilled agreement until October 14, 1941, on which date he failed to appear for trial; and that Himelhoch made one trip to California and one trip to Minnesota, expending approximately six hundred dollars in his unsuccessful endeavors to locate defendant.

An order was entered March 14, 1942, denying petition. Joe Himelhoch and General Casualty Company appealed.

Appellants contend that, as a matter of equity, the trial court should have set aside, upon terms, the forfeiture of the bail bond, as appellants in good faith attempted to return the principal and offered, after principal's apprehension, to reimburse the state in amount expended by it in returning the principal, who pleaded guilty of the crime charged and is now serving sentence therefor.

The statute, reading as follows, provides for forfeiture of bail, stay of execution for sixty days on judgment forfeiting bail, and vacation of the judgment of forfeiture, if the defendant for whom the bail was posted is produced in court prior to the expiration of sixty days from the date of forfeiture on such terms as may be just and equitable:

"In criminal cases where a recognizance for the appearance of any person, either as a witness or to appear and answer, shall have been taken and a default entered, the recognizance shall be declared forfeited by the court, and at the time of adjudging such forfeiture said court shall enter judgment against the principal and sureties named in such recognizance for the sum therein mentioned, and execution may issue thereon the same as upon other judgments." Rem. Rev. Stat., § 2231 [P. C. § 9347].

"The parties, or either of them, against whom such judgment may be entered in the superior or supreme courts, may stay said execution for sixty days by giving a bond, with two or more sureties, to be approved by the clerk conditioned for the payment of such judgment at the expiration of sixty days, unless the same shall be vacated before the expiration of that time." Rem. Rev. Stat., § 2232 [P. C. § 9348].

"If a bond be given and execution stayed, as provided in the last preceding section, and the person for whose appearance such recognizance was given shall be produced in court before the expiration of said period of sixty days, the judge may vacate such judgment upon such terms as may be just and equitable; otherwise execution shall forthwith issue as well against the sureties in the new bond as against the judgment debtors." Rem. Rev. Stat., § 2233 [P. C. § 9349].

The question presented is whether there was an abuse of judicial discretion by the trial court, in refusing to vacate the order forfeiting the bail bond furnished by appellants for compensation, when the principal willfully fled from this state to escape punishment, was apprehended by officials of another state more than ninety days after forfeiture of the bail, extradited from that state, pleaded guilty, and was sentenced.

In *State v. Olson,* 127 Wash. 300, 220 Pac. 776, which was a case of a private uncompensated surety and a prompt voluntary surrender of the defendant,

the trial court ordered one-half of the bail money, which was all that remained in the county treasury, to be returned to the bondsmen. The order was affirmed, upon the ground of its being a discretional judgment. In that case, we declared the rule applicable in cases of this kind as follows:

"The return of the bail is made to rest, in the code, upon such terms as shall be just and equitable, and this court in *State v. Johnson,* 69 Wash. 612, 126 Pac. 56, and *State v. Jackschitz,* 76 Wash. 253, 136 Pac. 132, has said that the order of the court 'will not be reversed on appeal except for a manifest abuse of discretion,' following the general rule as announced in 3 R. C. L. 63, to the effect that in 'the absence of evidence of flagrant abuse the appellate court will not interfere.' While it might have been entirely proper and even more appropriate to have set aside the entire forfeiture, still, this court cannot say that there was a 'manifest' or 'flagrant' abuse of discretion. Recognizing the encouragement which the law accords to the giving of bail and the return of fugitives to serve their sentences, and the encouragement which should be afforded vigilant and thrifty bondsmen in assisting in the thorough administration of the law's penalties, still, as we have indicated, the return of the bail money is a matter in which the trial court has a wide latitude for the exercise of its judgment, and we are not prepared to say that it was improperly exercised in this case."

In *State v. Jimas,* 166 Wash. 356, 7 P. (2d) 15, 84 A. L. R. 416, we reviewed the authorities and held that there was no abuse of judicial discretion in a trial court's refusal to order the return of any part of forfeited bail to a bondsman who, at considerable expense, had obtained the apprehension and return to the state of his fugitive principal, where a year elapsed between the forfeiture and the application for return, the money had been distributed to public funds, and the bondsman was one for compensation. We cited, with approval, *State v. Olson, supra,* and reiterated the rule

that, in the absence of evidence of flagrant abuse of discretion, we will not interfere with trial court's refusal to vacate order forfeiting bail.  We said:

"The test in such cases is not alone one of time, whether prompt or otherwise; nor good faith, or the lack of it; nor compensation, or lack of it, to the bondsmen or surety; nor whether there are organized, undisclosed principals in procuring the business of furnishing bail; nor distribution, or lack of it, of the money forfeited to public funds, some of which funds may not be represented by the county authorities.  On the contrary, the test is the judicial discretion of the trial judge, who, in formulating and arriving at his judgment, may look to all such things, if in the case, and others, if there are any, with the understanding, as stated in *State v. Olson,* 127 Wash. 300, 220 Pac. 776, quoting from 3 R. C. L. 63, that in 'the absence of evidence of flagrant abuse the appellate court will not interfere.'

"To like effect, as are our cases concerning the discretion of the trial court, is the decision of the United States circuit court of appeals in *Henry v. United States,* 288 Fed. 843.  That was a case of a paid surety and a defendant who had fled the jurisdiction, forfeiture of the bail bond entered, apprehension and return into custody of the defendant by the surety, in which the trial court's refusal to vacate the forfeited bail was affirmed.  The court referred to a statute involved which had to do with the *willful default of the party* as separate and distinct from the conduct of the surety, and said:

" 'We recognize the force of the plea made by a surety who helps apprehend the fleeing accused, but we are confronted with a question of statutory construction and not one of legislative wisdom.'

"Then, in further consideration of the case and outside of the statute, the court said:

" 'Nor can we say upon the record that the trial judge abused his discretion in this case.  Obviously this court is not in the same position as the trial court.  We are not exercising the discretion, but merely review-

ing the trial judge's action, to determine whether he abused his discretion.

" 'Defendant admits that he signed the bond for $100, charging the accused one-tenth of the amount of the bond. Whether, under these circumstances, the trial judge should refuse to relieve a surety who for gain engages in the bail bond business involves the exercise of discretion, which we are not justified in reversing because of any alleged abuse.'

"In the case of *Hickey v. State*, 150 Ark. 304, 234 S. W. 168, a defendant under bail fled, but was returned by his sureties after an order declaring the bail forfeited had been entered but before a formal judgment in the case. The trial court, exercising its discretion, refused to relieve the surety, and in affirming that judgment, the supreme court of the state said:

" 'The mere fact that the principal in the bond has been surrendered into custody by the bail does not entitle the bail, as a matter of right, to a remission of the penalty of the bond. 6 Corpus Juris, 1053.

" 'The substance of the answer is nothing more than that appellant, at his own expense, returned the principal in the bond to custody, and, as before stated, this does not necessarily call for a remission of the penalty. It devolved upon appellant to establish facts to justify favorable action in the exercise of the discretion authorized by the statute, and, even if the facts set forth in the answer are accepted as true, that does not necessarily show an abuse of the court's discretion.'

"Other authorities might be cited emphasizing what appears to be the common rule of judicial discretion in such cases, whether so declared by statute or arising out of the common law."

Appellants stress, in support of their argument for relief from forfeiture of the bail bond, their good faith and honest effort in attempting to obtain the return of the principal, in which efforts they expended approximately six hundred dollars.

Himelhoch, one of the appellants, testified that he was induced to obtain the bond by the principal and his friends, under an agreement whereby the principal

was obligated to report at regular intervals to Himelhoch and keep him informed as to his whereabouts, for a consideration of five hundred dollars, of which Himelhoch paid three hundred dollars to the surety. He further testified that the principal fulfilled the agreement until October 14, 1941, at which date the principal failed to appear for trial. It may be true that appellants made good faith attempts to obtain return of Van Wagner, but there is no evidence, other than the testimony of Himelhoch, that appellants ever made a good faith attempt, prior to the time that they learned of the apprehension of their principal in Oklahoma by law enforcement officers more than ninety days after entry of the order forfeiting the bond, to return their principal to this state. While Himelhoch testified that Van Wagner reported to him at regular intervals from July 23, 1941, when bond was posted, to October 14, 1941, when Van Wagner failed to appear for trial, the record discloses that the principal was a fugitive from justice September 15, 1941, at which time an order for a bench warrant for arrest of defendant was entered.

Van Wagner's attorney knew, and we doubt not that Himelhoch knew, that Van Wagner's bail was increased September 8, 1941, from five thousand dollars to twenty-five thousand dollars, and that the principal was given five days in which to post additional bail, which the principal did not do, but fled from the jurisdiction. Van Wagner's then attorney knew that an order for bench warrant for arrest of the fugitive was entered September 15, 1941. That attorney did not, nor did Himelhoch or the surety, evince any concern or interest in the matter of obtaining return of their fugitive principal until they learned more than ninety days after forfeiture of the bond of the apprehension of the fugitive in Oklahoma. Not until then

was the court or the prosecuting attorney aware that Himelhoch had any interest in the matter, and not until then, we repeat, did Himelhoch apprise the court or prosecuting attorney of his willingness, and desire of the surety, to pay the expense of extradition of the fugitive.

Whether appellants knew the character (they should have known) of the principal and of those who induced the surety to post the bond for Van Wagner, the record does not state; but we do know that appellants, as sureties, were in this business for the profit to be derived therefrom, and, surely, must have made such investigation as would inform them as to the highly speculative venture they were making in writing a bail bond for Van Wagner.

The principal's failure to appear was not due to an honest mistake or error on his part. The principal did not voluntarily surrender to his surety or to the court. The surety did not obtain the return of the principal to this state. In those jurisdictions in which the courts are permitted to remit penalty under bail bond whenever there has been no willful default of "party," it is held that, to be a subject of proper consideration for the court, the good faith exercised must be by the party to the action; that the word "party" in the statute refers to defendant and not to surety. See *United States v. Pessin,* 21 F. Supp. 896, and *United States v. Kelleher,* 57 F. (2d) 684, 84 A. L. R. 414. In the case at bar, the principal willfully defaulted. He was apprehended by the law enforcement officers. The purpose for which the bail was given was never fulfilled.

The test, in determining the question whether the trial court erred in refusing to vacate the forfeiture of a bail bond, "is not alone one of time whether prompt or otherwise; nor good faith, or the lack of it; nor compensation, or lack of it, to the bondsmen or

surety; nor whether there are organized, undisclosed principals in procuring the business of furnishing bail" but "is the judicial discretion of the trial judge, who, in formulating and arriving at his judgment, may look to all such things, if in the case, and others, if there are any, with the understanding, . . . that in 'the absence of evidence of flagrant abuse the appellate court will not interfere.' "  *State v. Jimas, supra.*

We, who are not exercising the discretion, but merely reviewing the trial court's action to determine whether that court abused its discretion in refusing to vacate the forfeiture of the bail bond, cannot say, on the record before us, other than that there is an absence of evidence of flagrant abuse of discretion; hence, under the rule to which we are committed, the judgment is affirmed.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.