[No. 31250. Department One. April 7, 1950.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES FRANCIS O'DAY *et al., Defendants,* CURFEW C. PEOPLES *et al., Appellants.*[1]

*W. J. Daly* and *Trumbull, Severyns & Trumbull,* for appellants.

*A. C. Grady,* for respondent.

BEALS, J.—By an information filed September 14, 1948, by the prosecuting attorney for Jefferson county, Ray James Cullen and James Francis O'Day were jointly charged with the crime of assault in the first degree, alleged to have been committed upon two persons, September 12, 1948.

Defendant Cullen having entered a plea of not guilty, the superior court fixed the bond to be filed by him by way of

[1] Reported in 216 P. (2d) 732.

bail, reducing the original amount of the bond to seventy-five hundred dollars by order entered September 21, 1948. At this time, Cullen was represented by counsel. A few days thereafter, a bail bond in the latter amount, with three individual sureties (who, apparently, were compensated), was approved by a judge of the superior court and filed, whereupon Cullen was released from jail. A bench warrant directing the arrest of Cullen was issued December 28th following, but Cullen was not apprehended.

An amended information was signed and verified January 11, 1949, and filed June 30, 1949, charging Cullen and his codefendant with the crime of assault in the first degree, and, by a second count, charging them with the crime of burglary in the second degree.

In an order signed and filed January 11, 1949, it was stated that the cause had been previously set for trial for January 27th, by agreement of counsel, and that the defendant Cullen had not been arraigned upon the amended information. The court ordered that he be produced in court on or before January 17th to be arraigned upon and to plead to the amended information. Apparently, a certified copy of the order last referred to was served upon Cullen's bondsmen, as well as upon his attorney of record.

The defendant not having been apprehended nor having appeared voluntarily, by an order dated January 18, 1949, Cullen was declared to be in default, the order continuing:

"It is further ordered, adjudged and decreed that the bail bond in the sum of $7,500.00, deposited with the Clerk herein, is hereby forfeited. Any surety therein is hereby directed to pay the face amount thereof to the Jefferson County Clerk and upon receipt of the face amount thereof, to-wit: the sum of $7,500.00, the Clerk is directed to pay the same to the County Treasurer for distribution according to law."

March 22, 1949, Cullen's bondsmen filed a written petition asking for a rescission of the order declaring the bail bond forfeited, and for an order exonerating the sureties from further liability. By their petition, the sureties alleged that, January 31, 1949, they had located defendant

Cullen, informing him that his presence before the superior court for Jefferson county was required; that, February 2nd following, Cullen surrendered himself to the sheriff of Jefferson county, and that he was still in custody at the time of filing the petition.

On the day that the petition was filed, the court issued an order directing the prosecuting attorney to appear May 20, 1949, and show cause why the relief prayed for should not be granted. The prosecuting attorney filed an affidavit in response to the order to show cause, and, August 26, 1949, the court entered an order reciting that the matter had been heard May 24th, and denying the petition of the sureties that the order forfeiting Cullen's bail be rescinded and the bond exonerated.

From a transcript of the court minutes, it appears that, June 30, 1949, on motion of the prosecuting attorney, count I of the amended information was dismissed, and Cullen, who was represented by counsel, entered his plea of guilty to the offense of burglary in the second degree, as charged by count II of the amended information, sentence being then pronounced.

September 27, 1949, a formal judgment was entered declaring the bond forfeited, and awarding the state of Washington judgment against Cullen and each of his sureties (who were named in the judgment) for the sum of seventy-five hundred dollars, the amount of the penalty of the bond.

From this judgment, the sureties have appealed, assigning error upon the denial by the trial court of the petition of appellants, as Cullen's sureties, for exoneration of the bail bond.

At the outset, it should be noted that the order of January 18, 1949, above referred to, is not, in form, a judgment and does not purport to be a judgment. It simply forfeited the bail bond and directed "any surety" thereon to pay the amount of the bond to the clerk of Jefferson county. The sureties on the bond are not referred to by name in this order. That the order was not a judgment, was evidently

recognized by the trial court, as the formal judgment of forfeiture entered September 27, 1949, concludes as follows:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the said Ray James Cullen is in default upon his bond and said bond is hereby declared forfeited and that the plaintiff herein, the State of Washington, do have and recover judgment as follows:

"(1) Against the defendant, Ray James Cullen and his sureties and each of them, to-wit: Curfew C. Peoples, Clara Frazier and Prentis I. Frazier, in the sum of $7,500.00."

From the statement of facts, it appears that, immediately upon the entry of the order of January 18, 1949, appellants retained Frank M. Nichols to locate the defendant Cullen. Mr. Nichols promptly found Cullen, who, under an assumed name, was working in a mine in Idaho. Upon learning of the situation in Port Townsend, Cullen immediately returned to the state of Washington with Mr. Nichols and surrendered to the sheriff of Jefferson county.

Rem. Rev. Stat., § 2231 [P.P.C. § 137-1], reads as follows:

"In criminal cases where a recognizance for the appearance of any person, either as a witness or to appear and answer, shall have been taken and a default entered, the recognizance shall be declared forfeited by the court, and at the time of adjudging such forfeiture said court shall enter judgment against the principal and sureties named in such recognizance for the sum therein mentioned, and execution may issue thereon the same as upon other judgments."

This section provides that, upon the entry of an order of default against the principal on a bail bond, the bond shall be declared forfeited and the court "shall enter judgment against the principal and sureties named [in the bond]" for the principal amount thereof.

Rem. Rev. Stat., §§ 2232 and 2233 [P.P.C. §§ 137-3, -5], read as follows:

"The parties, or either of them, against whom such judgment may be entered in the superior or supreme courts, may stay said execution for sixty days by giving a bond, with two or more sureties, to be approved by the clerk conditioned for the payment of such judgment at the expiration

of sixty days, unless the same shall be vacated before the expiration of that time.

"If a bond be given and execution stayed, as provided in the last preceding section, and the person for whose appearance such recognizance was given shall be produced in court before the expiration of said period of sixty days, the judge may vacate such judgment upon such terms as may be just and equitable; otherwise execution shall forthwith issue as well against the sureties in the new bond as against the judgment debtors."

From a minute entry by the clerk of the court, it appears that, January 17, 1949, appellant Prentis I. Frazier appeared before the court and asked for an extension of sixty days within which to produce the defendant, which the court refused to grant, and, the following day, signed the order referred to above. This order was not a judgment against appellants, and they did not, as provided by Rem. Rev. Stat., §§ 2232, 2233, *supra*, obtain a stay of execution for sixty days by filing a bond.

The defendant, R. J. Cullen, testifying on behalf of appellants at the hearing held May 24, 1949, stated that he was a defendant in the proceeding; that, when he was released on bail, he went to Seattle, but, having been subjected to police surveillance, he went to Kellogg, Idaho, where he had previously worked in a mine, and obtained employment under an assumed name to avoid police interference; that he had no money, and that he was working in an attempt to earn sufficient to pay his attorney for representing him in the case at bar. He testified that it was his understanding that the case against him would not be called for trial for about six months. He admitted that he had not left his address or told anyone in the state of Washington where he could be found. He testified, evidently truthfully, that he voluntarily accompanied Mr. Nichols to Seattle, where he was turned over to the sheriff of Jefferson county, who then happened to be in that city. It does not appear that the state of Washington was put to any expense whatever in returning Cullen to Port Townsend.

Cullen gave no definite reason for his belief that his case would not be called for trial for approximately six months.

Evidently, jury terms in Jefferson county are not particularly frequent, but, of course, Cullen's departure from the vicinity without leaving any address at which he could be reached was inexcusable. He did, however, immediately upon being advised that he was wanted in Port Townsend, report to the sheriff.

This court has several times had occasion to consider questions somewhat similar to that here presented.

In the case of *State v. Johnson*, 69 Wash. 612, 126 Pac. 56, this court, speaking through Ellis, J., reversed a judgment of the superior court denying the motion of defendant and her bondsmen to vacate a judgment forfeiting a bail bond. The defendant, who had been charged with the crime of grand larceny, was admitted to bail and, upon her request, the case was continued to January 3, 1911. When the case was called for trial on that day, the defendant failed to appear, and an order of default and forfeiture of the bail bond was entered, the order reciting that, on motion of the prosecuting attorney, the " 'court orders bail bonds forfeited and grants judgment against the defendant and sureties.' " February 18th following, a formal written judgment was entered against the defendant and her bondsmen in the sum of one thousand dollars, the penalty of the bond. Thereafter, judgment was stayed for sixty days by giving a bond, as provided by the statute above quoted. Within the sixty-day period, the defendant's bondsmen produced her before the court, and, during the month of June following, the defendant and her sureties moved the court to set aside and vacate the judgment against them. In ruling upon the motion, the trial judge stated that, apparently, the defendant, her attorneys, and sureties had acted in good faith, and had not

". . . in fact trifled with the court in the premises, but that he believed that to grant the application would in effect set at naught the efforts of the state to prosecute criminal cases in which defendants had been admitted to bail, and would make bonds in criminal cases of no force and effect, and would tend to thwart the ends of justice and he could see no reason why defendant could not and should

not have kept her counsel advised of her whereabouts so that she could have been notified that the case was set for trial."

In the course of the opinion, this court said:

"Unquestionably by the last quoted section [Rem. & Bal. Code, § 2233, now Rem. Rev. Stat., § 2233, *supra*], the vacation of the judgment is made a matter largely within the discretion of the trial court. That discretion, however, is not to be arbitrarily exercised. It is a judicial discretion. It is the manifest policy of the statute to encourage the giving of bail in proper cases, rather than to hold in custody at the state's expense persons accused of bailable offenses. The court should so administer cases arising under this statute as to give effect to this manifest policy. While the excuse given by the original defendants for not appearing did not appeal to the trial court as a good one, the fact that she did voluntarily return and surrender herself ought to have strong weight in her favor."

Concerning the first order forfeiting the bail bond, the court said:

"The respondent contends that the clerk's minutes of the order of default and forfeiture of the bail bond and for judgment against the defendant and her sureties on January 3d constituted the judgment, and that the defendant not having been produced within sixty days from that date, the court had no power to vacate the judgment. This position is not tenable. In the first place the clerk's entry was evidently not intended as a judgment. It was for no specific amount. It was in effect an order of default and forfeiture, and a direction that judgment be entered thereon. The prosecuting attorney so construed it by preparing and having entered a formal judgment for $1,000 one month and a half later. In the second place, there cannot be two subsisting judgments against the same parties for the same breach of the same bond. Even if the clerk's entry of January 3d had been sufficient to leave no doubt that it was intended as a judgment for the penalty of the bond, as directed by the statute, the court in entering the formal judgment at the instance of the judgment creditor in effect vacated the earlier one. The new judgment having been entered at the instance of the state, the state is now estopped to deny that it is the judgment of the court for all purposes."

The court held that the formal judgment entered February 18th was the only subsisting judgment on the bond, continuing: "The defendant was produced in court by her bondsmen within the statutory period from that date." As above stated, the judgment appealed from was reversed, with direction to vacate the same.

In the case of *State v. Jackschitz,* 76 Wash. 253, 136 Pac. 132, it appeared that the defendant, who had been at liberty under bond after conviction, fled the jurisdiction of the court, whereupon an order was entered forfeiting certain cash bail. About ten months thereafter, the defendant voluntarily surrendered and performed the judgment of the court. Upon petition of the defendant and her sureties, the judgment of forfeiture was vacated and the cash bail ordered returned to the bondsmen. From this order, the state appealed. In the course of the opinion, this court, speaking through Chadwick, J., said:

"Bail is not taken on forfeiture as money is taken for a debt due upon a valid consideration. The object of bail is to insure the attendance of the principal and his obedience to the orders and judgment of the court. There should be no suggestion of bounty or revenue to the state or of punishment to the surety."

The opinion also refers to the fact that the giving of bail should be encouraged, and the order appealed from was affirmed.

In *State v. Reed,* 127 Wash. 166, 219 Pac. 833, it appeared that the defendant was charged before a justice of the peace with the crime of forgery, and that, after her arrest, she was admitted to bail and released upon the filing of a bond. When the case was called for trial, it was continued on motion of the defendant. When the case was again called, the defendant failed to appear and her bail bond was forfeited, whereupon the justice filed with the clerk of the superior court a transcript of the proceedings, stating that the defendant had left the jurisdiction of the court and was a fugitive from justice. It appeared that the defendant had been arrested in another state, where she was held for trial. In an action by the state to recover on the bail bond, the trial

court granted the defendant's plea in abatement, from which order the state appealed. This court held that, as the defendant was confined in another state upon her conviction of a crime there committed, and, upon her release from such confinement, might be apprehended as a fugitive from justice and returned to this state for trial under the pending charge, the trial court correctly stayed the judgment against the sureties. The court noted that the sureties "have offered, and the trial court has required, the payment of the costs and expenses that have been incurred by the state up to the date of the order." The order appealed from was affirmed.

The case of *State v. Olson,* 127 Wash. 300, 220 Pac. 776, is also in point. It appeared that Olson, having been convicted of a crime, appealed to this court and deposited a cash bail of five hundred dollars. The judgment appealed from was affirmed by this court; but, from a few days after the affirmance of the judgment, Olson was held in custody by Federal authorities in Oregon and, consequently, could not return to this state. A few months later, he was released from custody and surrendered to the Washington authorities. While he was in custody in Oregon, his cash bail was forfeited, and, upon his surrender, his father, who had deposited the bail money, petitioned for the vacation of the order of forfeiture. It appeared that the county treasurer had remitted one half of the bail money to the state treasurer, pursuant to law, and the trial court vacated the order of forfeiture by directing the return to Olson's father of the two hundred fifty dollars remaining in the county treasury, less ten dollars' expense which the county had paid.

On appeal, the appellant contended that the entire five hundred dollars should have been returned. No stay bond had been deposited pursuant to Rem. Rev. Stat., § 2232, *supra.* The opinion states that

". . . While it might have been entirely proper and even more appropriate to have set aside the entire forfeiture, still, this court cannot say that there was a 'manifest' or 'flagrant' abuse of discretion."

The judgment appealed from was affirmed. One judge dissented, being of the opinion that the superior court should have directed the return of the entire amount.

In the case of *State v. Jimas*, 166 Wash. 356, 7 P. (2d) 15, 84 A. L. R. 416, this court affirmed an order of the superior court refusing to vacate the forfeiture of a bail bond, in the sum of fifteen hundred fifteen dollars, upon the surrender of the defendant in a criminal action. The defendant had been tried and found guilty, but, when notified to appear for sentence, he fled from the state, and an order was entered declaring the bond forfeited. The surety paid into court the amount of the bond, with interest, and, one year after the entry of the order of forfeiture, the surety filed a petition to vacate that order, which petition the trial court denied. The surety's agent had compensated appellant, and it appeared that the money forfeited had already been distributed to various public funds in accordance with statute. In the course of the opinion, this court said:

"The test in such cases is not alone one of time, whether prompt or otherwise; nor good faith, or the lack of it; nor compensation, or lack of it, to the bondsmen or surety; nor whether there are organized, undisclosed principals in procuring the business of furnishing bail; nor distribution, or lack of it, of the money forfeited to public funds, some of which funds may not be represented by the county authorities. On the contrary, the test is the judicial discretion of the trial judge, who, in formulating and arriving at his judgment, may look to all such things, if in the case, and others, if there are any, with the understanding, as stated in *State v. Olson*, 127 Wash. 300, 220 Pac. 776, quoting from 3 R. C. L. 63, that in 'the absence of evidence of flagrant abuse the appellate court will not interfere.' "

A majority of the department which heard the case concurred in the affirmance of the judgment, one judge dissenting.

Respondent's counsel cites the case of *State v. Van Wagner*, 16 Wn. (2d) 54, 132 P. (2d) 359. The defendant was charged with the crime of attempted grand larceny. His bail was fixed at five thousand dollars, and he promptly filed a bond in that amount, executed by the General Cas-

ualty Company of America as surety. In due time, it appeared that one Joe Himelhoch had arranged with the surety for the filing of the bond, receiving from defendant five hundred dollars, of which he paid three hundred dollars to the surety. The action was set for trial October 14, 1941, and the amount of the bail was increased to twenty-five thousand dollars, which the defendant was ordered to post within five days. September 15, 1941, the issuance of a bench warrant for the arrest of the defendant was ordered, the defendant having fled the state. When the case was called for trial on the date above referred to, the defendant not appearing, an order was entered declaring the five-thousand-dollar bond forfeited.

Late in January, 1942, the prosecution learned that Van Wagner was under arrest in Oklahoma. Meanwhile, neither Himelhoch nor the surety had indicated any interest in the apprehension of the defendant. The state sent a representative to Oklahoma to return the defendant to Washington. Himelhoch, whose interest in the matter was, up to that time, unknown to the prosecution, offered to pay all expenses connected with the extradition of the defendant, who was returned to this state, his bail being increased to fifty thousand dollars, in default of which he remained in jail. The defendant pleaded guilty February 27, 1942, and, March 7th following, Himelhoch petitioned for the vacation of the order of October 14, 1941, forfeiting the bail. At the hearing on this petition, Himelhoch testified that, after the default of the defendant, he had expended approximately six hundred dollars in an unsuccessful attempt to locate Van Wagner. March 14, 1942, the petition to vacate the order forfeiting the bail was denied, whereupon Himelhoch and the surety appealed, contending that the trial court had erred in failing to set aside, upon terms, the forfeiture of the bail bond, as the appellants had attempted to locate Van Wagner and bring him to this state and, after his apprehension, had offered to reimburse the state for expenses incurred in returning the defendant. The surety had made

no attempt to avail itself of the provisions of Rem. Rev. Stat., §§ 2232, 2233, *supra*.

This court affirmed the order of the superior court, citing our decisions referred to above. Of course, Van Wagner's attorney knew, and, in the opinon in the case under discussion, this court assumed that Himelhoch knew, that Van Wagner's bail had been increased September 8, 1941, and that a bench warrant for his arrest had been entered September 15th. It appeared that neither· defendant's counsel nor Himelhoch nor the surety evidenced

" . . . any concern or interest in the matter of obtaining return of their fugitive principal until they learned more than ninety days after forfeiture of the bond of the apprehension of the fugitive in Oklahoma. Not until then was the court or the prosecuting attorney aware that Himelhoch had any interest in the matter, and not until then, we repeat, did Himelhoch apprise the court or prosecuting attorney of his willingness, and desire of the surety, to pay the expense of extradition of the fugitive."

The court calls attention to the fact that the sureties were engaged in the business of writing bonds, and "must have made such investigation as would inform them as to the highly speculative venture they were making in writing a bail bond for Van Wagner." The opinion also calls attention to the fact that the defendant's failure to appear was not due to any honest mistake on his part; that he did not voluntarily surrender to his surety or to the court and that the surety did not obtain Van Wagner's return to this state. The opinion then states:

"In those jurisdictions in which the courts are permitted to remit penalty under bail bond whenever there has been no willful default of 'party,' it is held that, to be a subject of proper consideration for the court, the good faith exercised must be by the party to the action; that the word 'party' in the statute refers to defendant and not to surety. See *United States v. Pessin*, 21 F. Supp. 896, and *United States v. Kelleher*, 57 F. (2d) 684, 84 A. L. R. 414. In the case at bar, the principal willfully defaulted. He was apprehended by the law enforcement officers. The purpose for which the bail was given was never fulfilled."

The court then quotes from *State v. Jimas, supra,* and continues:

"We, who are not exercising the discretion, but merely reviewing the trial court's action to determine whether that court abused its discretion in refusing to vacate the forfeiture of the bail bond, cannot say, on the record before us, other than that there is an absence of evidence of flagrant abuse of discretion; hence, under the rule to which we are committed, the judgment is affirmed."

Respondent relies strongly upon the *Van Wagner* case. In its oral opinion, the trial court also referred to that case, stating that the only apparent difference between the facts in the case at bar and those in the *Van Wagner* case was that, in that case, the defendant's bail was increased, and, in the case at bar, it was decreased. The court quoted from the *Van Wagner* case as follows:

" 'The principal's failure to appear was not due to an honest mistake or error on his part. The principal did not voluntarily surrender to his surety or to the court.' "

In the *Van Wagner* case, it appeared that the defendant deliberately fled from this state. While Himelhoch testified that he had made two trips in an endeavor to locate the defendant, any effort which he made was entirely futile. The state returned Van Wagner to Washington, and not until his apprehension in Oklahoma was the state advised of any interest in the matter by his surety.

In the case at bar, the court, by its order entered January 18, 1949, properly adjudged Cullen to be in default and declared the bail forfeited. Cullen's sureties thereupon actively concerned themselves in the matter and procured Cullen's return to this state and his surrender to the sheriff. It seems clear that, while Cullen's departure from the state without leaving his address was wrongful, he had not made any real effort to escape. He voluntarily left Idaho and surrendered to proper authority. His sureties' efforts to procure his attendance before the court were promptly exerted and were entirely successful, Cullen cooperating. The prosecuting attorney then moved to dismiss one count of the amended information, and Cullen pleaded

guilty to the other count. Three months thereafter, and while Cullen was serving his sentence, the judgment of forfeiture was entered.

■ While the Van Wagner case should be accorded serious consideration in determining the issue presented in the case at bar, so should the other decisions of this court above cited. We approve the rule laid down in these cases to the effect that the matter of forfeiture, nonforfeiture or partial forfeiture of bail rests primarily in the sound discretion of the trial court, and that this court will not interfere with the exercise of that discretion, unless it appears that the court abused its discretion.

■ In the case at bar, it is not disputed that Cullen surrendered to the authorities February 2, 1949, and, thereafter, remained in custody. His sureties promptly and efficiently proceeded to bring Cullen within the jurisdiction of the court and, apparently, Cullen willingly cooperated.

In consideration of all the admitted facts, we are of the opinion that the trial court, in entering the judgment declaring the bail bond forfeited, abused its discretion, within the rules laid down by our decisions referred to above.

The judgment appealed from is reversed, and the cause remanded to the superior court, with instructions to ascertain what, if any, expense the county was put to by reason of Cullen's absence from the state during the month of January, 1949; and, if the county was put to any such expense, upon payment by appellant sureties of the amount found by the court, a judgment will be entered exonerating the bond referred to and releasing appellant sureties from all liability thereon.

SIMPSON, C. J., GRADY, and DONWORTH, JJ., concur.

SCHWELLENBACH, J., (dissenting)—The statute does not provide that the judge *shall* vacate the judgment upon such terms as may be just and equitable, but that he *may* do so. *State v. Olson,* 127 Wash. 300, 220 Pac. 776, mentioned by the majority, lays down the test to be used by us in reviewing the discretion of the trial court in matters such as this:

"The return of the bail is made to rest, in the code, upon such terms as shall be just and equitable, and this court in *State v. Johnson,* 69 Wash. 612, 126 Pac. 56, and *State v. Jackschitz,* 76 Wash. 253, 136 Pac. 132, has said that the order of the court 'will not be reversed on appeal except for a manifest abuse of discretion,' following the general rule as announced in 3 R. C. L. 63, to the effect that in 'the absence of evidence of flagrant abuse the appellate court will not interfere.' While it might have been entirely proper and even more appropriate to have set aside the entire forfeiture, still, this court cannot say that there was a 'manifest' or 'flagrant' abuse of discretion. Recognizing the encouragement which the law accords to the giving of bail and the return of fugitives to serve their sentences, and the encouragement which should be afforded vigilant and thrifty bondsmen in assisting in the thorough administration of the law's penalties, still, as we have indicated, the return of the bail money is a matter in which the trial court has a wide latitude for the exercise of its judgment, and we are not prepared to say that it was improperly exercised in this case."

The reasons for the action of the trial court in the case at bar are given in its oral decision:

"It will be remembered in this connection that the two defendants named in the case, that is to say, Cullen and O'Day, were imprisoned in the county jail on or about the 14th day of September, 1948. On the apprehension of the Defendant Cullen, the bail was endorsed in the sum of $15,000.00 On or about the 21st of September, 1948, the Court, on Motion and representation and showing of C. C. Chavelle of Chavelle & Chavelle, who were the counsel for these parties, reduced the bail from $15,000.00 to $7,500.00 which was the first mistake that the Court made in this proceeding. . . .

"An amended information was filed after the bail was reduced from $15,000.00 to $7,500.00 and either it shows categorically on the face, I am not certain, but at least it was understood between Mr. Chavelle, and Mr. Grady and the Court, that the reduction would be made on the condition that a Surety Bond, or something equal thereto, would be furnished, and on the 21st of September, the Defendant Cullen, and others, particularly Prentice J. Frazier, being a professional bail bondsman as he informed the Court, and as is understood by all parties, made this Bond, on which he was justified before a Judge in King County.

"Then the further steps are all here and the Court wanted to be sure about one thing before disposing of the matter.

"It will be remembered that a jury term was set up primarily for the purpose of disposing of these two cases and that the jury term was continued by an appropriate Order before the thirty day period had expired, for a period of thirty days. This case was continued several times on the request of the attorney of record for the Defendant Cullen, and finally set up for a time within at least two or three days, or very close to the end of the second term. Mr. Chavelle came over here, I think at the time that O'Day was sentenced by this Court to a term in the State Penitentiary,— and he told me at that time that he was aware of the fact that this man was fugitive, or at least could not be found in the jurisdiction at the time of the last setting.

"I think that this case is very close to the Van Wagner case. That matter came on, on a motion of the Prosecutor to forfeit the Bond.

"This man, according to his own testimony at the time he was examined here in Court, admitted that he had left or that he had fled, and as he says, without having advised his wife of the fact, whether that is true I do not know, but it is true that clearly he had fled and had no intention of appearing at the time of the trial, and did not appear, and his attorney had ample and continuous notice of the setting of the case, and the only difference that I can see between this matter and the Van Wagner case is that in that case the man, Himelhoch, was the bondsman instead of Frazier, and in that case Van Wagner's bail was increased and in this one decreased. The utmost good faith was exercised in all of the proceedings, by the Prosecuting Attorney, and particularly in that he did not resist the application to reduce the bail. It says in the Van Wagner case:

"'The principal's failure to appear was not due to an honest mistake or error on his part. The principal did not voluntarily surrender to his surety or to the Court.' [16 Wn. (2d) 62.]

"In this case the sureties did succeed in their endeavors to apprehend this man long after the jury term had closed.

"I take it that the bail bond business is like any other business; there are risks involved in the carrying on of it like any other business and whatever the premium was for this bond is not material and of no concern to this court, but it is a matter of common knowledge that all bail bond

premiums are at least substantial, and I do not think that counsel for the Defendant was fair with the Court, or the Prosecuting Attorney in not telling him at the time this matter· was set that the defendant Cullen was fugitive. It is true, as counsel for the Surety states, that the man was returned here without expense to the County, and it is also true that Frazier sustained the loss in this matter. There is no showing as to what amount of money was expended by the Surety in apprehending and returning the man, and I don't know of any way that I can fix that amount. He had expenses as the files show, and the Prosecuting Attorney stated that there were signs and dodgers and face sheets that published the 'mugs' which were circulated up and down the Pacific Coast, and it is further apparent that some private detective, who operates for such outfits as Frazier's and others found this man and returned him to Frazier's office or to the police eventually.

"It seems to me that the bail should be forfeited. I cannot see any reason in the world why it should not be. There was nothing said at the time it was argued that appealed to me as illustrating any reason why it should not be forfeited, but I think that I have the impression that the surety should be credited in some amount or ·to some degree for what they are out of pocket in returning the defendant. ·

"MR. GRADY. I have heretofore advised ·the Attorney for the Bondsman that I would recommend that a finding should be made that the Bondsman be allowed the sum of $2,000.00 or $2,500.00 that should be remanded to the Bondsman for the surrender of the defendant, and I would so recommend now."

While I am satisfied from the above that there was no abuse of discretion whatever, there can be no question that, as was said in the *Olson* case, "this court cannot say that there was a *'manifest'* or *'flagrant'* abuse of discretion." (Italics mine.)

Of course, we should do nothing to discourage the giving of bail in criminal cases. But by the same token we should do nothing to encourage the "jumping" of bail after the defendant has been released. The orderly conduct of criminal procedure requires the defendant to appear when called. His release on bail is expressly conditioned on such appearance, or he must suffer forfeiture thereof. The bail bond

executed by Cullen and his sureties provided that Cullen should appear before the court in Jefferson county *on call.* That was a solemn obligation executed by the parties to the bond. In utter disregard of that obligation, Cullen left the state under an assumed name. He informed neither the court, his counsel, nor his bondsman of such departure; nor did he apprise any of them of his whereabouts when eventually his flight ended in Idaho. It is difficult to conceive of a more clear-cut case of deliberate "bail-jumping."

Recognizing the responsibility of a trial judge to gauge the conduct of criminal procedure in his own county, we have always refused to reverse him in matters of this kind, except for a manifest abuse of discretion. I am fearful that the effect of this decision will be to encourage defendants and bondsmen to disregard the obligations of their bond, and flout the power of the trial judges to call them to task for so doing. In the light of this decision few trial judges would venture to forfeit the bail of a defendant no matter how remiss that defendant might be in making his appearance when called. They are apt to feel that, although the statute has given them the right of discretion, the supreme court has taken it away.

Apparently the prosecutor and judge were both of the opinion that the bondsmen should be reimbursed for the money that they expended in apprehending and returning the defendant, and I suggest that the case be remanded and the judgment modified to that extent.

May 16, 1950.  Petition for rehearing denied.