No. 14760

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

THE STATE OF MONTANA,

   Plaintiff and Respondent,

 vs.

THURMAN J. MUSGROVE,

   Defendant and Appellant,

 and

INTERNATIONAL FIDELITY INSURANCE COMPANY,

   Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
      Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

 For Appellants:

  Delaney, Dalby & Mudd, Missoula, Montana

 For Respondent:

  Hon. Mike Greely, Attorney General, Helena, Montana
  M. Shaun Donovan, County Attorney, Superior, Montana

---

      Submitted on briefs: November 15, 1979

        Decided: APR 24 1980

Filed: APR 24 1980

Thomas J. Kearney
        Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

International Fidelity Insurance Company (herein referred to as the insurance company) appeals from the order and judgment of the Mineral County District Court discharging half of the forfeiture of a $50,000 bail bond. The insurance company contends first, that the trial court erred in excluding relevant, admissible evidence concerning the excuse of mental illness offered to exonerate the bond forfeiture, and second, that there is insufficient evidence to support the trial court's determination.

Defendant Musgrove was charged with mitigated deliberate homicide, and a $50,000 bail bond was posted by the insurance company. During the course of the defendant's trial in January 1979, the defendant was free under the insurance company's bond. The defendant attended all the proceeding during the course of the trial. On Friday, January 26, 1979, the trial court recessed the trial at the close of the evidence. The defendant was required to appear the following Monday, when final arguments to the jury were to take place. The defendant failed to appear on Monday, having left Montana and fled to Texas over the weekend. The trial court desiring to avoid a mistrial, recessed the defendant's trial until Wednesday, February 7, 1979.

Following the defendant's failure to appear, the trial court entered an order declaring that the insurance company's surety bond be forfeited in its entirety; and also issued a bench warrant for the defendant's arrest. The defendant, at the urging of and with the assistance of the insurance company's representatives, surrendered to law enforcement officers in Mineral County on February 6, 1979. The defendant attended the final day of trial on February 7, 1979, and was convicted and sentenced.

The insurance company petitioned the trial court, pursuant to section 46-9-503, MCA, to enter an order discharging the bond forfeiture. A hearing was held on February 21, 1979; and the trial court found that the defendant willfully failed to appear for the conclusion of his trial on January 29, 1979 and departed the State of Montana to the State of Texas. The trial court further found that the defendant was returned to Montana and surrendered himself to the Mineral County Sheriff on February 6, 1979, through the efforts and with the assistance of representatives of the insurance company. The trial court ordered that the forfeiture of the $50,000 bond be discharged in the amount of $25,000; and entered judgment against the defendant and the insurance company in the amount of $25,000. This appeal followed.

The controlling statute is section 46-9-503(3), MCA, which provides:

> "If at any time within 30 days after the
> forfeiture the defendant or his bail appear
> and satisfactorily excuse his negligence or
> failure to comply with the conditions of the
> bail, the court, in its discretion, may direct
> the forfeiture of the bail to be discharged upon
> such terms as may be just."

The insurance company's sole ground for relief from the bond forfeiture was the defendant's mental condition constituted, under section 46-9-503(3), a satisfactory excuse for the defendant's failure to appear on January 29, 1979. At the hearing the insurance company offered evidence to demonstrate that the defendant was in such a mental state, involving acute distress, as to be suicidal in nature, which prompted him to flee to Texas.

After leaving Montana and fleeing to Texas, the defendant went to and admitted himself into the Villa Rosa Hospital in

-3-

San Antonio, Texas, on January 31, 1979.  Dr. Allen C.
Chittenden examined the defendant on February 1, 1979,
and diagnosed the defendant as suffering from psychotic
depression-suicide.  Dr. Chittenden's report was admitted
into evidence at the hearing.  Additionally, on the morning
of the bond forfeiture-exoneration hearing, Dr. Chittenden
called the trial judge and expressed that his main concern
was that the defendant might attempt suicide while being
incarcerated.

Jean Ganatta, the representative of the insurance company
who brought the defendant back to Montana, testified that
the defendant appeared in her office in Pueblo, Colorado on
Saturday, February 3, 1979.  Ganatta testified that the
defendant looked terrible, was very nervous, shaking all
over, and looked like he was scared to death.

The insurance company contends that the trial court
erred in excluding relevant, admissible evidence directly
concerning the excuse of mental illness offered to exonerate
the bond forfeiture.  The insurance company unsuccessfully
attempted to offer testimony of the defendant's wife as to
her observations of the defendant's appearance and condition.

The trial court improperly excluded the wife's opinion
testimony.  The wife's opinion testimony was offered by the
insurance company in order to meet the statutory criteria of
satisfactory excuse for defendant's failure to appear.
Under Rule 701, M.R.Evid., opinion testimony of a lay witness
is admissible.  Here the wife's observations as to the
defendant's appearance and condition is clearly relevant,
admissible lay opinion testimony.

Additionally, the trial court improperly commented upon
the defendant's state of mind concerning the defendant's
failure to appear when it said:

-4-

"Now, I'm not going to argue that the entire bond be forfeited. As counsel has shown the bonding company did return Mr. Musgrove to the State of Montana. They said willingly, I won't argue with that. I will give him that. But when fled, he did so willfully and I would advise the Court of one final factor. The very flight of the Defendant from the State of Montana I'm sure will be used as grounds for an appeal to this matter and if that be the case, Mineral County will be put to the expense of a third trial in this matter. In addition the Defendant has now indicated that he must require court appointed counsel which also includes the production of the transcript at County expense. I would move the Court that at least twenty-five thousand dollars of this bond be forfeited in the interest of justice both as a penalty to the Defendant and, also, to insure that sufficient funds will be available for a third trial."

At the conclusion of the hearing, the trial court made the following statements concerning the bond forfeiture.

"The Defendant Mr. Musgrove is the one that committed the wrong here and from personal standpoint, Dexter, you say the only loss was the dollars the County put out. I promise you that the County Attorney in Superior and the Judge in that particular case sweated out twenty-five thousand dollars worth of sweatbeads trying to figure out what to do in this particular case. It was a very agonizing situation and, I think, the whole purpose of a bond is to make sure that the Court is not subjected to that type of pressure.

"I think you said there was some justification for the Defendant to flee and that the Court should take that into consideration. There was lots of justification; he was guilty as all get out. A jury found twice and I heard the testimony; I certainly agree with that. But that's not justification to flee. That's a poor excuse and the bonding company is the one that is responsible here. If they are going to put up a bond for a person, I think they should somewhat administer that bond and make sure the Defendant is there. It is not the responsibility of the Court to do it. As a matter-of-fact, the Court can't do anything with a bond out. It is not the responsibility of the County Attorney or the Sheriff; they can't do anything. The bonding company here is in the wrong. The Defendant is in the wrong. But I do appreciate the bonding company bringing the Defendant back so that we could conclude the trial before a mistrial was declared and, I think the County Attorney was very generous in offering the bonding company a twenty-five thousand dollar rebate or exoneration for that purpose."

Our review of the record leaves no doubt that the $25,000 bond forfeiture was imposed as a penalty.

-6-

"THE COURT: Well, Mr. Delaney, there isn't any doubt in my mind as the judge who presided on the trial that at that particular time Mr. Musgrove knew the jury was going to find him guilty because the testimony was so obvious in that direction and the Instructions settled by the Court was so obvious in that direction. I know that he knew this was going to happen and I know that because of that he failed to show up the next day. There is no doubt in my mind that he was upset. I think I would have been."

The trial court's statements indicate to us a bias which resulted in effectively denying the insurance company an opportunity to establish its case of excuse in order to exonerate the bond forfeiture.

As another ground of appeal, the insurance company contends that the evidence does not support the order and judgment of the trial court which discharged half of the forfeiture of the $50,000 bond. Indeed, the insurance company argues that the $25,000 bond forfeiture is in effect, a penalty not authorized by law. The State, on the other hand, contends that section 46-9-503(3) permits just the kind of action that was taken here.

The purpose of bail, however, under section 46-9-101, MCA, is to insure the presence of a defendant in a pending criminal proceeding. It is not the purpose of bail to punish a defendant or surety, nor to increase the revenue of the state. See Allison v. People (1955), 132 Colo. 56, 286 P.2d 1102, Application of Shetsky (1953), 239 Minn. 463, 60 N.W.2d 40; State v. O'Day (1950), 36 Wash.2d 146, 216 P.2d 732. Here, the record shows that Mineral County incurred approximately $1,000 in additional expense because the defendant fled the jurisdiction. While we cannot say that $1,000 is the appropriate measure of a bond forfeiture, it is clear here that the $25,000 bond forfeiture was imposed as a penalty.

At the hearing the State requested that at least $25,000 of the bond be forfeited as a penalty to the defendant and to insure that funds would be available for another possible trial. The State argued:

-5-

The appellate record is also muddied by the failure of the trial court to enter proper findings of fact and conclusions of law. Rather, the trial court simply entered an all-encompassing conclusion that the defendant willfully failed to appear for the conclusion of his trial. The insurance company's contentions as to excuse were not addressed at all. Nor were findings entered supporting or explaining how the trial court determined that there should be a $25,000 bond forfeiture. The record before us, however, leads to the inescapable conclusion that it was imposed as a penalty, an impermissible penalty.

It is clear here that the real question is reaching a decision to discharge the bail "upon such terms as may be just." Section 46-9-503(3). The prosecutor argued that he would not argue that the entire bond be forfeited and the trial court in effect agreed in not declaring a forfeiture of the entire amount.

This cause is remanded to the District Court for a determination of "just terms" for discharging the bail. Any judgment reached shall not consider as factors either a penalty to the defendant or the insurance company or revenue to the state.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-7-