No. 89-314

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JAMES D. COATES,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Martin John Elison, Hardin, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
Jennifer Anders, Asst. Atty. General, Helena
Robert L. Deschamps, III; Betty Wing, Deputy, Missoula,
Montana

Submitted on Briefs: Dec. 14, 1989

Decided: February 14, 1990

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

James Coates appeals an order of the Fourth Judicial District, Missoula County, Montana, denying Mr. Coates' petition for post-conviction relief. We affirm.

Appellant raises three issues for review:

1. Was appellant denied an evidentiary hearing on his petition for post-conviction relief?

2. Was the hearing the appellant received a full and fair hearing?

3. Did the District Court err in finding that appellant had not been denied effective assistance of counsel and thus err in denying the petition for post-conviction relief?

Following a jury trial, appellant was convicted of four counts of felony theft on May 1, 1987. At trial, Bernard J. Goldman represented appellant. Mr. Goldman also handled Mr. Coates' appeal to this Court.

On September 2, 1988, pursuant to § 46-21-201, MCA, appellant's new counsel filed a petition for post-conviction relief that alleged appellant was denied effective assistance of counsel at trial. Specifically, appellant cited eight alleged errors committed by Mr. Goldman. The parties filed briefs and the District Court held a hearing on December 12, 1988. During the hearing, appellant presented a witness on his behalf and testified

2

himself. The State called as a witness the deputy county attorney who prosecuted appellant.

At the end of the hearing, the District Judge added to the record his observations regarding Mr. Goldman's conduct during appellant's trial. Neither the appellant nor the State objected to the Judge's comments and both counsel asked the Judge questions. On January 13, 1989, the District Court issued findings of fact and conclusions of law denying appellant's request for post-conviction relief. The District Court found that Mr. Goldman's alleged errors were in the main tactical decisions, that another lawyer could not have obtained a better result, and that Mr. Goldman had not ineffectively represented appellant.

I

Appellant contends that the District Court erred in not granting appellant an evidentiary hearing in which to present proof regarding his allegations of ineffective assistance of counsel. Appellant's argument belies the record. Section 46-21-201, MCA, details the procedure relating to a petition for post-conviction relief and provides in part as follows:

46-21-201. Proceedings on the petition.

(1) Unless the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief, the court shall cause notice thereof to be served upon the county attorney in the county in which the conviction took place and the attorney general and order them to file a responsive pleading

3

to the petition. Following its review of the responsive pleading, the court may dismiss the petition as a matter of law for failure to state a claim for relief or it may grant a prompt hearing thereon, determine the issue, and make findings of fact and conclusions with respect thereto.

(2) The court may receive proof by affidavits, depositions, oral testimony, or other evidence. In its discretion the court may order the petitioner brought before the court for the hearing.

The District Court granted appellant a hearing as outlined in § 46-21-201(1), MCA, and received evidence in the form of oral testimony and exhibits. The statute plainly contemplates that the hearing on a post-conviction petition will be to determine the issues raised in the petition. Nothing in the record supports appellant's argument that the hearing held was not such an evidentiary hearing. We reject appellant's argument.

II

Appellant alleges that the District Court failed to give him a proper hearing because it ignored the rules of civil procedure and it made improper comments during the hearing. We disagree.

A petition for post-conviction relief is civil in nature rather than criminal. Coleman v. State (Mont. 1981), 633 P.2d 624, 627, 38 St.Rep. 1352, 1354. However, "district courts are not strictly bound by all the rules of civil procedure" in post-conviction relief hearings. State v. Perry (Mont. 1988), 758 P.2d 268, 276, 45 St. Rep. 1192, 1201. As appellant neither cites any

4

specific rules that the District Court violated nor cites any authority in support of his argument, we reject his contention. We hold that the District Court followed the procedures established by § 46-21-201, MCA.

Additionally, appellant argues that he did not receive a fair hearing because the District Judge made prejudicial remarks at the end of the hearing that indicated bias on the part of the Judge. The Judge's comments related to his observations of Mr. Goldman's conduct of appellant's trial. The critical inquiry is whether the Judge's remarks deprived appellant of a full and fair hearing. Perry, 758 P.2d at 275. We do not find that his remarks reflect bias and prevented appellant from receiving a full and fair hearing.

Appellant frames his bias argument in generalizations. His argument appears to be that because the Judge articulated his observations regarding Mr. Goldman's trial conduct that the Judge was biased. In other words that the Judge's remarks indicate his unwillingness or inability to impartially consider appellant's evidence that Mr. Goldman ineffectively represented him. However, the mere fact that the Judge articulated his observations does not, without more, constitute bias and appellant has not buttressed his argument with anything specific.

Petitions for post-conviction relief are directed to either this Court or to the presiding district court judge. The statute

5

specifies the presiding district judge precisely because that judge is familiar with the underlying criminal case. By directing the post-conviction relief petition to the presiding district judge, the judge who is most familiar with the conduct of the trial has the opportunity to correct any errors that occurred during the trial. See Coleman, 633 P.2d at 626-628. The fact that a judge is familiar with how counsel conducted a trial does not equal bias and in post-conviction relief hearings familiarity is considered a benefit. In particular, the presiding judge will have observed an attorney's handling of a trial in regard to general behavior, thoroughness of preparation, and effectiveness of case presentation.

In the instant case, the Judge's remarks did not reflect any unwillingness to consider appellant's evidence regarding ineffective assistance of counsel. These remarks came at the end of the hearing after all evidence had been presented. The appellant does not allege that the Judge made any improper remarks as the parties presented their case nor does appellant allege that the Judge improperly excluded any evidence appellant offered. As well, appellant does not argue that the remarks indicated personal bias toward either Mr. Goldman or appellant. Additionally, the Judge's observations mirrored the testimony of the prosecuting attorney at appellant's trial.

In contrast to the case at bar stands State v. Musgrove

6

(1980), 187 Mont. 549, 610 P.2d 710, where we found that the trial judge's comments indicated bias, or an unwillingness to consider evidence. In Musgrove, the defendant had failed to appear at trial on the day of closing arguments. The trial court ordered the insurance company's $50,000 bond forfeited. Shortly thereafter the defendant returned voluntarily and was convicted and sentenced.

The insurance company moved the trial court for an order discharging the bond forfeiture on the grounds that the defendant's mental condition excused his failure to appear at trial. Although the trial court, after a hearing, did discharge $25,000 of the bond forfeiture, the insurance company appealed alleging in part that the trial judge had improperly excluded evidence of the defendant's mental condition. We found that the trial judge had improperly excluded evidence of the defendant's mental condition as well as improperly commented on the defendant's state of mind with the following remarks:

> THE COURT: Well, Mr. Delaney, there isn't any doubt in my mind as the judge who presided on the trial that at that particular time Mr. Musgrove knew the jury was going to find him guilty because the testimony was so obvious in that direction and the Instructions settled by the Court was [sic] so obvious in that direction. I know that he knew this was going to happen and I know that because of that he failed to show up the next day. There is no doubt in my mind that he was upset. I think I would have been.

Musgrove, 610 P.2d at 712. We found that those statements

7

indicated

"bias which resulted in effectively denying the insurance company an opportunity to establish its case of excuse in order to exonerate the bond forfeiture." Musgrove, 610 P.2d at 712. We also noted that the trial judge's findings did not address the insurance company's contentions and evidence regarding excuse. Musgrove, 610 P.2d at 713.

As mentioned above, we do not discern a similar bias or unwillingness to consider appellant's evidence in the instant case. The District Judge scheduled a hearing which he is not required to do if he finds the petition meritless. Section 46-21-201(1), MCA. Each party thoroughly briefed the issues, and each party presented evidence at the hearing. The Judge stated that he had considered all the testimony, evidence and briefs in making his decision and he wrote detailed findings of fact and conclusions of law that directly dealt with appellant's contentions. Moreover, we cannot say that the Judge's decision is not supported by substantial evidence. We hold that the Judge's remarks did not reflect bias and did not deprive appellant of a full and fair hearing.


III

The standard of review for denial of post-conviction relief is whether substantial evidence supports the findings and conclusions of the district court. Yother v. State (1979), 182

8

Mont. 351, 355, 597 P.2d 79, 82. Appellant argues that the District Court erred in failing to find that Mr. Goldman was an ineffective counsel. We disagree.

In evaluating ineffective assistance of counsel claims, this Court utilizes a two-part test set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, counsel's performance must be deficient. To assess deficient performance, this Court employs the "'reasonably affective assistance' test of whether a defendant's counsel acted within the range of competence demanded of attorneys in criminal cases. (Citation omitted.)" State v. Elliott (1986), 221 Mont. 174, 178, 717 P.2d 572, 575. Second, counsel's deficient performance must have so prejudiced the defendant as to deprive the defendant of a fair trial. State v. Leavens (1986), 222 Mont. 473, 475, 723 P.2d 236, 237. The standard for evaluating prejudice is whether a reasonable probability exists that but for counsel's deficient performance, the trial's outcome would have been different. Leavens, 723 P.2d at 237. However, in evaluating a defense counsel's performance, this Court will not second guess trial tactics and strategy. State v. LaValley (1983), 203 Mont. 393, 397, 661 P.2d 869, 872.

In his petition for post-conviction relief, appellant alleged the following eight specific errors by Mr. Goldman:

      1.   Failure  to  object  to  the  use  of

9

statements made by defendant prior to reading defendant his <u>Miranda</u> warnings.

2. Opening the door to testimony of a prior conviction.

3. Failure to suppress evidence seized from the back of defendant's vehicle by challenging probable cause of the search warrant.

4. Failure to obtain witnesses necessary for his defense.

5. Improper preparation for trial.

6. Failure to properly question witnesses.

7. Failure to appeal certain issues.

8. Mr. Goldman's drug abuse adversely affecting his ability to represent the defendant.

As mentioned, all of these issues were thoroughly briefed by both parties prior to the hearing.

Regarding allegations 1, 2, 3, and 7, the District Court's findings indicate that it found Mr. Goldman's decisions on these issues to be tactical. The District Court found and upon review we concur, that defendant likely would not have prevailed in trying to exclude the defendant's statements or in suppressing the evidence seized, either at the pretrial proceeding or on appeal. The District Court noted that Mr. Goldman's primary concern related to the identity of the informer and that he pressed that issue with vigor during pretrial proceedings and on appeal.

As well, the District Court concluded that it was trial

10

tactics that led Mr. Goldman to ask appellant on direct examination whether he had to have a background check to have a business license. On cross-examination, because the defense had "opened the door," the prosecuting attorney was able to elicit from appellant the fact of his prior theft conviction. However, as the prosecuting attorney testified, had she not caught Mr. Goldman's brief reference to appellant's background and followed up, Mr. Goldman would have had an excellent foundation for a closing argument. The evidence supports the conclusion that Mr. Goldman's decisions on allegations 1, 2, 3, and 7 were trial tactics and we will not second guess trial tactics.

As to allegation number 4, failure to obtain two necessary witnesses, appellant does not demonstrate exactly how the absence of these witnesses prejudiced him. The record discloses that the County subpoenaed the two witnesses to no avail. Mr. Goldman apparently knew that these witnesses could not be located so any attempt on his part to subpoena them would have been futile. Further, appellant's argument does not specify exactly what testimony these witnesses would have given that would have assisted the defense. Without a showing of prejudice, appellant's argument fails. State v. Henricks (1983), 206 Mont. 469, 475-476, 672 P.2d 20, 24.

Regarding allegations 5 and 6, the record contains substantial evidence that, on the whole, Mr. Goldman was prepared for trial and

11

properly questioned witnesses. The prosecuting attorney testified that Mr. Goldman aggressively questioned witnesses and effectively brought out the defects in the State's case. She testified that his questions reflected his familiarity with the facts of the case and that his questioning elicited the information that he needed to establish the defense. Although appellant argues that Mr. Goldman should have asked certain questions, appellant again fails to establish exactly how those questions would have materially assisted his defense.

Finally, as to allegation 8, the record discloses no specific evidence that Mr. Goldman's cocaine abuse, which has become public knowledge, rendered his conduct of appellant's trial incompetent. Most of appellant's argument on this issue relates back to the alleged errors already discussed. If those allegations had been found to reflect ineffective assistance of counsel, then one might infer that cocaine abuse may have been a contributing factor. However, absent any specific errors or conduct identified in the trial that affected the trial's outcome, Mr. Goldman's cocaine abuse is irrelevant to the issue of ineffective assistance of counsel.

In summary, substantial evidence in the record supports the District Court's conclusion that another lawyer would not have obtained a more favorable result for appellant considering the amount of evidence the State presented against appellant.

12

Appellant has failed to establish that Mr. Goldman's performance was deficient or that any of his alleged errors prejudiced the outcome of the trial.

Affirmed.

_____
John Conway Harrison
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

13

Justice John C. Sheehy, dissenting:

It is provided in Rule 605, Montana Rules of Evidence:
The judge presiding at the trial may not testify in that trial as a witness. <u>No objection need be made in order to preserve the point</u>. (Emphasis added.)

The statements made by the district judge at the hearing for post conviction relief were statements of fact, although he was an unsworn witness. Moreover, the district judge founded his <u>findings</u> of fact based on <u>his own observations</u> made at the hearing.

This is what occurred in the post-conviction hearing, when the matter was before the District Court:

THE COURT: Do you have any other witnesses to call?

MS. WING: No witnesses.

THE COURT: Rebuttal witnesses?

MR. ELISON: None.

THE COURT: Counsel, let me make some observations for the record.

Obviously I am not an expert or even an amateur on how a person acts when they are under the influence of cocaine. However, I did make these observations of Bernie Goldman when he was here during the trial.

I didn't see that he had any shakes or disruptive or mumbling speech. He had good eye contact. I didn't see any mood swings in the sense that one minute he would be very angry, the next he would be euphoric. When the prosecution witnesses were on, he was his usual abrasive self, as he has been for many years, but that's how he does his cases, and generally with some good success and sometimes not.

I noticed many discussions between the Defendant and Mr.

14

Goldman during the trial, but I should point out that it's been my experience with Bernie Goldman when he goes to trial, he runs his own show and that it seems to be his policy that he does not allow his clients to run the trial. He kind of decides how he is going to run the case and then he proceeds from there.

It's also been my experience with Mr. Goldman, and seemed to be his practice here, is that he will--he is quite clever about his trial tactics and his tactics here were consistent with that, for example, when he attempted to just very briefly passing mention the fact that the Defendant had to be--had a background check or get checked in order to have a license. I am sure he would have referred to this in his closing argument and, of course, the State seized on that as opening some information in regards to the Defendant's background. If the State had not been alert, that would have slipped on through and the jury would have been left with the impression brought out by Goldman's final argument that the Defendant was a model citizen as far as his business license is concerned.

It seemed to me the gist of Goldman's case that he was primarily concerned with the informer and he pressed that hard at all the pretrial proceedings and obviously he pressed it on appeal. And I got the impression that he knew the case was--and I will use it in quotes, "in trouble," as far as the search was concerned and the statements that may have been made by the Defendant.

And in conclusion, Counsel, I am of the opinion that another result would not have occurred if he would have had another lawyer. I think that another lawyer would not have been able to obtain him a more favorable result. It is possible, but I don't think so under the amount of evidence that the State marshalled against the Defendant in this case.

Those are just, for the record, those are the observations that I made while we had the trial.

I have examined the briefs that have been submitted in the case as well as the evidence presented here at the trial, and I do not feel that Mr. Goldman was an ineffective counsel. His decisions in many cases were tactical decisions that we may or may not agree with.

I think he took the approach that to--the approach being not to spend a lot of time with issues that were obvious losers and went ahead into--to press on the one issue where he thought that he knew if he could require--get

15

me to require the State to identify the informer, that the State's case would collapse completely. And that seemed to be the gist of his case at the beginning and then during the trial, to attack the credibility of the State's witnesses during the trial itself.

My conclusion, Counsel, is that your motion should be denied and it is so ordered.

MS. WING: Your Honor, might I inquire, you have made some observations about Mr. Goldman and I wonder if you would mind putting something on the record of your years of experience with him or how long he has practiced in front of you.

THE COURT: I have--as County Attorney I have had several cases against him and his father and eight years now of trials involving Mr. Goldman. And some of which he has been successful, but I didn't see anything different in his behavior and actions in this trial from other ones. I don't always agree with the way that Mr. Goldman tries his cases, but you can't argue with success and he has in my court several very good successes, but this was not one of them.

MR. ELISON: Regarding the Supreme Court opinion, how long do I have to get that to you? Tomorrow? Or is that not going to bear on the case at this point?

THE COURT: Well, I have their opinion.

MR. ELISON: Oh, okay--no, I mean the one in which Bernie was disbarred.

THE COURT: Oh. I have a sense of what that is and I testified--no, it was not this case. I was aware of some of the allegations against him and so I have a pretty good idea what the circumstances were. It's largely of his cocaine use, but like I said, Counsel, I have to admit that my expertise on cocaine users and how they behave in court is nonexistent, but he didn't seem--he didn't seem to be out of the norm for Bernie. And there were not occasions where I would talk to him and he would be like--would be spaced out or not understanding what I am saying, you know. And so he seemed to be tracking well at the trial and all I can say is he made some tactical decisions and some worked and some didn't work.

MR. ELISON: I suppose I could have used an expert witness on what an addict on cocaine would act like?

THE COURT: Well, tell me--

16

MR. ELISON: I don't think there would be any particularly noticeable thing. It's going to be--it is going to be mostly--it's a speed, so it's an upper and would make him more--it actually might make him more productive on occasions, but it is also kind of a mind scrambler and so he will forget things. He will think that he is doing something that he really, really isn't successfully doing. He will forget what has happened a day or two before. And probably when he leaves, he won't get much sleep and it will throw his thinking off, but I suppose if there are no tactical errors or errors in the transcript that you can see--

THE COURT: Well, I wouldn't say that he--well, you know that thing about the--Mr. Coates' background check, that's not an error. That's a classic Bernie Goldman, I hate to say, maneuver, but it is a maneuver and he almost slipped that thing through and he just ran it through very quickly and had the State not picked up on that, he would have had an outstanding base for a closing argument. That's a classic Bernie Goldman maneuver. So I am not going to say it was wrong to do that. He might have gotten it by, if the County Attorney would not have been attentive at that point it would have been in. And that's how Bernie tries his cases and he is frequently successful.

MR. ELISON: So, in other words, it is not a mistake?

THE COURT: I don't think it was a mistake. I think it was purposeful on Bernie's part, quite frankly, because I have seen him do things before. So that's my ruling, Counsel.

Would you make an appropriate order reflecting my ruling?

MS. WING: I will.

Because of Rule 605, M.R.Evid., the District Court was incompetent as a witness to testify as to his observations, sworn or unsworn, of the activities of counsel for the defendant during the District Court trial. If the District Court intended to be a witness, it should have been proper procedure to call in another district judge in order to hear the petition for post-conviction

17

relief.

The point that the District Court made observations of fact as a witness is buttressed by the findings of fact made by the same judge which appear to be completely founded on the court's own observations. Witness:

### Findings of Fact

1. The court observed no signs of Mr. Goldman being under the influence of drugs. There were no shakes or disruptive or mumbling speech. He had good eye contact. There were no mood swings in the sense that one minute he would be very angry, the next he would be euphoric. When the prosecution witnesses were testifying, he was his usual abrasive self as he has been for many years. His style has generally had some good success and sometimes not.

2. Mr. Goldman held many discussions with the Defendant during the trial. It has been the Court's experience, however, that when Bernie Goldman goes to trial, it seems to be his policy that he controls the case and does not allow his clients to run the trial.

3. It has been the court's experience that it is Mr. Goldman's practice to be clever with his trial tactics, and his tactics in this case were consistent. For example, he attempted to very briefly in passing mention the fact that the Defendant had to have a background check in order to obtain a business license. He surely would have referred to this in his closing argument. If the State had not been alert, the information would have slipped on through and the jury would have been left with the impression that the Defendant was a model citizen. The State, however, seized on that as opening the testimony for information in regards to the Defendant's background.

The duty of a judge to conduct an impartial trial is illustrated in the following paragraph:

The trial judge must strive to have the trial conducted in an atmosphere of impartiality. His conduct in trying a case must be fair to both sides, and he should refrain from remarks that may injure a litigant. He should not engage in conduct which amounts to acting as counsel for one of the parties. Except where authorized by statute, it is improper for a judge to assume the role of the witness in a case being tried before him, and doing so

18

constitutes reversible error. How great a departure from fairness amounts to reversible error is determined by the answer to the fundamental inquiry whether or not was done was prejudicial to the appellant or plaintiff in error.

75 Am.Jur.2d 191, Trial, § 87.

Rule 605 of the Montana Rules of Evidence is based upon its federal counterpart. Moore points out that the rule provides an "automatic objection" because to require an actual objection would confront the opponent with a choice of not objecting with the result of allowing the testimony, and objecting, with the probable result of excluding the testimony, but at the price of continuing the trial before a judge likely to feel that his integrity had been attacked by the objector. 10 Moore's Federal Practice, (2d ed. 1976), ¶ 605.01[3].

Two of the dangers pointed out by Moore in having the judge testify at the trial over which he is presiding are (1) who will rule on objections, claims of privilege and other matters normally under judicial control, and (2) in a bench trial the judge who testifies will have to consider his own testimony in the light of other testimony in the case.

In adopting findings of fact in the case at bar, the district judge weighed his own testimony as observations against the evidence adduced by the defendant and based his findings of fact upon his own observations, thus rejecting the evidence and testimony of the defendant.

Moreover, both the District Court and the majority state as a fact in their Opinion that a new trial for the defendant would

19

not end in a different result. Aside from it being sheer speculation, the probable future result of a fair trial should have no weight in considering whether a defendant receive a fair trial before an impartial tribunal in the former proceedings. The only question we should decide upon a petition for post-conviction relief is whether the defendant's sentence is subject to collateral attack upon any ground of alleged error available under a writ of habeas corpus. Section 46-21-101, MCA. Those grounds do not include the possibility that in a new trial the defendant will be reconvicted.

For the reasons foregoing, I would remand for a new hearing on post-conviction relief before another district judge. Nothing would then preclude the present district judge from appearing as a witness to present his observations, which of course would be pertinent to the issues in this case.

John C. Sheehy
Justice