[No. 52844–6.   En Banc.   December 11, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM A. HAMPTON, *Defendant,* BAKER–JOHNSON BAIL BOND COMPANY, *Petitioner.*

*Richard D. Smith,* for petitioner.

*C. Thomas Moser, Prosecuting Attorney,* and *David R. Needy, Deputy,* for respondent.

DOLLIVER, C.J.—On March 12, 1982, defendant William A. Hampton was charged with first degree theft. National Automobile and Casualty Company and Baker–Johnson Bail Bond Company posted a $10,000 bail bond on Hampton's behalf.

On May 4, 1982, Hampton pleaded guilty. Sentencing was set for June 29. On that date, Hampton appeared for sentencing. The trial court rejected the prosecutor's recommended sentence and orally sentenced Hampton to the Department of Corrections for a term of not more than 10 years. Hampton's attorney requested his client be allowed

to begin serving his sentence on July 1. In response, the court postponed the signing of judgment and sentence and ordered Hampton to return on July 1, but he failed to do so.

On September 9, 1982, the trial court forfeited the bail bond. On November 1, Baker paid the full amount of bail. A search for Hampton was commenced by the bonding company, and he ultimately was arrested in Indiana and returned to Washington. Baker spent approximately $3,000 in its successful attempt to locate Hampton.

On February 8, 1983, with Hampton present, the trial court signed the judgment and sentence. At the same time, Baker moved to be exonerated on the bail bond. The motion was denied by letter from the trial court which stated:

> I have considered your petition to return the bail money forfeited in the above entitled cause, and I refuse to relieve the bonding company of this forfeiture.

The trial court later denied Baker's motion for reconsideration.

Baker appealed. The Court of Appeals held the bail bond was not discharged when the trial court orally pronounced judgment and sentence. It also held the refusal of the trial court to vacate a portion of the forfeiture was an abuse of discretion because Baker's efforts had led to Hampton's return to Washington. Consequently, the Court of Appeals directed that Baker should recover the amounts it reasonably expended in returning Hampton to Washington, less the reasonable expenses incurred by the State in the same endeavor. *State v. Hampton,* 42 Wn. App. 130, 138, 709 P.2d 1221 (1985).

The first issue is whether the bail bond posted on the defendant's behalf was discharged as a matter of law upon the oral pronouncement of judgment and sentence. Baker argues that *State v. Akers,* 156 Wash. 353, 286 P. 846 (1930), in which the bail bond was discharged when the defendant pleaded guilty and was fined, sentenced, and remanded into custody, is controlling. In *Akers,* as in this

case, the defendant was to begin serving his sentence at a later date. In *Akers,* however, in contrast to this case, on the date of the guilty plea the court immediately rendered a final signed judgment.

■ Baker argues the oral judgment and sentencing on June 29 satisfy the test for exoneration of bail bonds. "A bail bond is discharged when the principal is found guilty, sentenced, and committed." *State v. Ransom,* 34 Wn. App. 819, 822, 664 P.2d 521 (1983). In Washington courts, however, oral pronouncements of judgment and sentence are not conclusive or final. *State v. Dailey,* 93 Wn.2d 454, 458–59, 610 P.2d 357 (1980).

Baker asserts it did all it was required to do because the bond it posted only required Baker to assure Hampton's appearance on June 29, 1982. The terms of the bail bond affect the liability of the surety. *State v. Lewis,* 35 Wash. 261, 269, 77 P. 198 (1904). Here the bail bond required Hampton to "abide by and perform all orders and judgments of said court . . . and not depart from said court without leave of said court until discharged by due course of law . . ." In this case, the court ordered the defendant to appear at a later date. This is in contrast to the situation in *State v. Elizondo,* 85 Wn.2d 935, 937–38, 540 P.2d 1370 (1975):

> The critical question then was the status of the defendant after he appeared in court on August 29. . . . His bail bond was conditioned upon his appearance at that time and he appeared. The bail agreement also required defendant to appear at such other times as the court may require. *The court made no such requirement.* As a matter of law his bond was exonerated.

(Italics ours.)

The requirements for the exoneration of a bail bond have not been met. The June 29 oral pronouncement does not suffice as a judgment, sentence, and commitment order which would exonerate the bail bond. Furthermore, a condition was imposed with which the defendant failed to comply. The Court of Appeals properly ruled the bond was

forfeited.

The second issue is whether the trial court abused its discretion in denying the motion to vacate. Baker argues that when, at its own expense, it brought the defendant back to the jurisdiction of the court the trial court abused its discretion by not exonerating the bail bond in full. Baker further contends the recovery allowed by the Court of Appeals—the approximate amount expended in returning Hampton to the state less the expenses incurred by the State in the same endeavor—is such that it would have been better off not to have expended any money to return Hampton to this jurisdiction.

Baker argues the Court of Appeals result is inconsistent with the policy behind bail bonding, which is "to encourage the giving of bail in proper cases, rather than to hold in custody at the state's expense persons accused of bailable offenses." (Italics omitted.) *State v. Mullen*, 66 Wn.2d 255, 258, 401 P.2d 991 (1965). In order to encourage that bail bonds are provided,

> courts have been liberal in vacating judgments entered on bail bonds, exercising always a broad discretion and in proper cases preserving the equities of the public by deducting such costs and expenses as may have been incurred by the state. To hold otherwise would discourage the giving of bail and defeat the manifest purpose of the statute [now codified as RCW 10.19.105].

*State v. Jackschitz*, 76 Wash. 253, 256, 136 P. 132 (1913).

The pertinent statutes are RCW 10.19.100 and .105, which provide:

> The parties, or either of them, against whom such judgment may be entered in the superior or supreme courts, may stay said execution for sixty days by giving a bond with two or more sureties, to be approved by the clerk, conditioned for the payment of such judgment at the expiration of sixty days, unless the same shall be vacated before the expiration of that time.

RCW 10.19.100.

> If a bond be given and execution stayed, as provided in RCW 10.19.100, and the person for whose appearance

such recognizance was given shall be produced in court before the expiration of said period of sixty days, the judge may vacate such judgment upon such terms as may be just and equitable, otherwise execution shall forthwith issue as well against the sureties in the new bond as against the judgment debtors.

RCW 10.19.105.

██ In addition, the courts retain the common law power to vacate a forfeiture of a bail bond after the expiration of the 60–day period. *See Jackschitz,* at 256; *State v. Ringrose,* 71 Wn.2d 99, 101–02, 426 P.2d 848 (1967). Moreover, in 1986, the Legislature extended the 60–day period to 12 months. RCW 10.19.140.

In *State v. Mullen, supra,* we held that where the bonding company is diligent in returning the defendant to the court's jurisdiction, to forfeit the bail is an abuse of discretion. However, we note that in *Mullen* the defendant was returned to the jurisdiction of the court within the 60–day statutory period. The court in *State v. Molina,* 8 Wn. App. 551, 553–54, 507 P.2d 909 (1973) held it to be an abuse of discretion to refuse to vacate a forfeiture judgment when the defendant appears or is in custody in another state at the time the forfeiture judgment is entered or within the 60–day stay of execution period. The court further stated that "after expiration of the 60–day stay of execution period, the trial court exercising its inherent discretion has been affirmed in every instance whether or not the motion to vacate has been granted or denied." *Molina,* at 554.

In *Molina,* the Court of Appeals upheld a denial of a motion to vacate. Unlike the present case, however, in *Molina* the efforts of the bonding company to locate the defendant proved fruitless. Based in part on this distinction, the Court of Appeals in *Hampton* held the trial court's refusal to vacate the judgment was not based on tenable grounds or reasons. We agree the trial court abused its discretion, but do not follow the Court of Appeals in distinguishing *Molina.*

██ "A trial court abuses its discretion when its exercise

of discretion is manifestly unreasonable or based upon untenable grounds or reasons." *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984); *State v. Olson*, 127 Wash. 300, 301–02, 220 P. 776 (1923), *aff'd*, 130 Wash. 708, 226 P. 1026 (1924). Here, the trial court gave no reasons at all. In refusing to vacate a bail forfeiture the trial court must state its reasons for so doing in order for an appellate court to determine whether there was an abuse of discretion. Because the trial court did not provide any reasons for its decision, we cannot say it based its decision on tenable grounds or reasons. We hold the trial court abused its discretion.

■ On the issue of damages, we hold the Court of Appeals awarded an improper amount of damages. Statutory and common law authority provides that when a forfeiture is vacated the proper amount of damages is the amount of the bond, less the expenses of the State in attempting to locate the principal. *See, e.g.*, RCW 10.19-.140; *Mullen*, at 259; *Jackschitz*, at 256.

We reverse the Court of Appeals and remand to the trial court for entry of judgment consistent with this opinion.

UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., and JOHNSON, J. Pro Tem., concur.