219 P.3d 700 (2009)
STATE of Washington, Respondent,
v.
William Joseph KRAMER, Defendant,
All City Bail Bonds, Petitioner.
No. 81071-1.
Supreme Court of Washington, En Banc.
Argued September 25, 2008.
Decided November 19, 2009.
*701 James Lawrence Studt, James L. Studt Law Office, PLLC, Spokane, WA, for Petitioner.
Melvin Day Hoit, Lincoln County Pros. Office, Davenport, WA, for Respondent.
MADSEN, J.
¶ 1 This case involves a trial court's discretion to refuse to vacate a default judgment of forfeiture against a surety when the defendant has been returned to custody within the 60 days provided by RCW 10.19.105. This court has long held that bondsmen are entitled to exoneration of bonds whenever a defendant is returned to custody within 60 days. We find the trial court erred in refusing to vacate a default judgment of forfeiture against All City Bail Bonds. All City should have received the benefit of the equities provided for in RCW 10.19.105. We reverse the Court of Appeals.

FACTS
¶ 2 All City posted a $20,000 appearance bond for William Kramer on June 5, 2005. On December 19, 2005, Mr. Kramer failed to appear at a scheduled court hearing and the bond was immediately forfeited. On December 26, 2005, Mr. Kramer was apprehended by the Lincoln County Sheriff's Department and taken into custody. All City maintained daily contact with Mr. Kramer during his seven day absence, encouraged him to turn himself into law enforcement, and arranged a time when Mr. Kramer would surrender himself to All City.
¶ 3 The day after Mr. Kramer was returned to custody, December 27, 2005, All City mailed a proposed order to the Lincoln County clerk requesting vacation of the default forfeiture. In February 2006, the State filed an opposition to All City's proposed order. A hearing in the matter was held on June 22, 2006. At the hearing, All City forewent a factual hearing on the issue of All City's role in Mr. Kramer's apprehension and instead argued it was by law entitled to exoneration of the entire bond, minus costs to the State, because Mr. Kramer was back in custody within the 60 days envisioned by RCW 10.19.105. Transcript (TR) (June 22, 2006) at 6. The trial court rejected All City's argument and found it was "equitable to forfeit the bond because All City Bail Bonds did not take action to secure the defendant's presence in court." Clerk's Papers (CP) at 30.
¶ 4 All City appealed the ruling to the Court of Appeals, arguing, inter alia, that the laws and policies of Washington State "encourag[e] the giving of bail in proper cases" and that the trial court's forfeiture of the entire bond amounted to an impermissible "revenue measure in lieu of fine, [serving only] to punish sureties." Br. of Appellant at 16 (citations omitted). The Court of Appeals upheld the trial court's finding, stating, "All City lacked direct responsibility for Mr. Kramer's apprehension under RCW 10.19.140" but remanded for further explanation of the refusal to grant partial exoneration on the basis of a four-factored balancing test crafted by the court for that purpose. State v. Kramer, 141 Wash.App. 892, 899, 174 P.3d 1193 (2007).
¶ 5 All City petitioned this court for review, arguing the Court of Appeals decision (1) is in direct conflict with Washington Supreme Court decisions establishing a nearly per se rule of bond exoneration whenever a defendant is returned to custody within 60 days and (2) is in direct conflict with state policy encouraging the giving of bail bonds as required by article I section 20 of the Washington State Constitution.

ANALYSIS
¶ 6 "[A]n application to set aside an order forfeiting a bail bond is addressed to the sound discretion of the [trial] court, and is analogous to a proceeding in equity.... [I]n considering appeals from default orders, this court will exercise its own sound discretion, *702 and will reverse the judgment of the trial court if it appears that the discretion of that court was not properly or equitably exercised." State v. Sullivan, 172 Wash. 530, 535, 22 P.2d 56 (1933). This state's bail policy is designed to ensure that "[a]ll persons charged with crime shall be bailable by sufficient sureties." WASH. CONST. art. I, § 20 (mandating bail in all criminal cases except for capital cases).
¶ 7 The legislature established guidelines for the application of this constitutional imperative in the Code of 1881. The original enactments are nearly identical to the current provisions RCW 10.19.100 and .105. Compare RCW 10.19.100 with Code of 1881, ch. 90, § 1138 and RCW 10.19.105 with Code of 1881, ch. 90, § 1139. This court extensively discussed the policy and purpose of the original recognizance statutes in our seminal case on bond forfeiture in State v. Jackschitz, 76 Wash. 253, 136 P. 132 (1913). Our decision in Jackschitz explains the court's role in exoneration with precision and eloquence and warrants repeating at length here:
Bail is not taken on forfeiture as money is taken for a debt due upon a valid consideration. The object of bail is to insure the attendance of the principal and his obedience to the orders and judgment of the court. There should be no suggestion of bounty or revenue to the state or of punishment to the surety.
"The object of an appearance bond is to secure the trial of offenders rather than to fill the state coffers by forced contributions from sureties." State v. Williams, 37 La. Ann. 200, 202 [(1885)].
These things may result, but should not be insisted upon when the purpose of the lawthat is, the surrender, conviction and incarceration of the principalhas been accomplished.

"It is the manifest policy of the statute to encourage the giving of bail in proper cases, rather than to hold in custody at the state's expense persons accused of bailable offenses. The court should so administer cases arising under this statute as to give effect to this manifest policy." State v. Johnson, [69 Wash. 612, 616, 126 P. 56 (1912)].
In United States v. Feely, [25 Fed. Cas. 1055, 1057 (C.C.D.Va.1813) (No. 15,082)], John Marshall said:
"The object of a recognizance is, not to enrich the treasury, but to combine the administration of criminal justice with the convenience of a person accused, but not proved to be guilty. If the accused has, under circumstances which show that there was no design to evade the justice of his country, forfeited his recognizance, but repairs the default as much as is in his power, by appearing at the succeeding term, and submitting himself to the law, the real intention and object of the recognizance are effected, and no injury is done. If the accused prove innocent, it would be unreasonable and unjust in government to exact from an innocent man a penalty, intended only to secure a trial, because the trial was suspended, in consequence of events which are deemed a reasonable excuse for not appearing on the day mentioned in the recognizance. If he be found guilty, he must suffer the punishment intended by the law for his offense, and it would be unreasonable to superadd the penalty of an obligation entered into only to secure a trial."
The right of bail is so fundamental that it is guaranteed in the Bill of Rights. The giving of bail should be encouraged for various reasons: that the state may be relieved of the burden of keeping an accused person; that the innocent shall not be confined pending a trial and formal acquittal; that, in cases of flight, a recapture may be aided by the bondsmen who, it is presumed, will be moved by an incentive to prevent judgment, or, if it has been entered, to absolve it and to mitigate its penalties. To accomplish these things and others, courts have been liberal in vacating judgments entered on bail bonds, exercising always a broad discretion and in proper cases preserving the equities of the public by deducting such costs and expenses as may have been incurred by the state. To hold otherwise would discourage the giving of bail and defeat the manifest purpose of the statute. Our construction of the statute relied on is that it *703 undertakes to direct, almost as a matter of right, that a judgment shall be vacated within the sixty-day period, without limiting the common law power of the court in proper cases.
Jackschitz, 76 Wash. at 255-56, 136 P. 132 (emphasis added).
¶ 8 Since articulating this framework in Jackschitz, Washington courts have consistently interpreted chapter 10.19 RCW liberally and given bondsmen vacation of a judgment of forfeiture when the defendant is produced to the court within 60 days. State v. Molina, 8 Wash.App. 551, 553-54, 507 P.2d 909 (1973) ("Where a defendant appears or is in custody in another state at the time the forfeiture judgment is entered, or within the 60-day stay of execution period, it has been generally held to be an abuse of discretion to refuse to vacate the judgment or grant a stay or continuance until the defendant can be returned." (footnote omitted)) (citing State v. Mullen, 66 Wash.2d 255, 401 P.2d 991 (1965); State v. Heslin, 63 Wash.2d 957, 389 P.2d 892 (1964); State v. O'Day, 36 Wash.2d 146, 216 P.2d 732 (1950); State v. Seibert, 170 Wash. 80, 15 P.2d 281 (1932); State v. Reed, 127 Wash. 166, 219 P. 833 (1923); State v. Olson, 127 Wash. 300, 220 P. 776 (1923); State v. Bailey, 121 Wash. 413, 209 P. 847 (1922); Johnson, 69 Wash. 612, 126 P. 56).
¶ 9 This right to exoneration whenever a defendant is returned within 60 days has been upheld "irrespective of who was responsible'" for the defendant's return. Mullen, 66 Wash.2d at 259, 401 P.2d 991 (emphasis added).
¶ 10 At the hearing on All City's motion to vacate the default judgment, the trial court focused on two factors: (1) All City's failure to apprehend Mr. Kramer before he was picked up by law enforcement, and (2) All City's failure to request a stay of execution of the forfeiture judgment as permitted by RCW 10.19.100. Taking these two omissions by All City together, the trial court concluded All City did "not meet the statutory requirement under RCW 10.19.140 for return of bond." CP at 30.
¶ 11 Consideration of textual language and the interplay of sections .100 and .105 are essential to analyzing the role that a stay of execution plays in a surety's efforts to exonerate a forfeited bond. For this reason, I quote both in full:
The parties, or either of them, against whom such judgment may be entered in the superior or supreme courts, may stay said execution for sixty days by giving a bond with two or more sureties, to be approved by the clerk, conditioned for the payment of such judgment at the expiration of sixty days, unless the same shall be vacated before the expiration of that time.
RCW 10.19.100.
If a bond be given and execution stayed, as provided in RCW 10.19.100, and the person for whose appearance such recognizance was given shall be produced in court before the expiration of said period of sixty days, the judge may vacate such judgment upon such terms as may be just and equitable, otherwise execution shall forthwith issue as well against the sureties in the new bond as against the judgment debtors.
RCW 10.19.105.
¶ 12 Section .105 is not a precondition to vacation of a default judgment: the opening phrase of section .105 states, "[i]f a bond be given and execution stayed" refers to the "giving a bond with two or more sureties" in section .100.[1] The opening phrase must be interpreted "as provided in RCW 10.19.100r" RCW 10.19.105 (emphasis added). Section .100 permits, but does not require, a surety to request a stay: a surety "may stay said execution ... by giving a bond ... unless [the default judgment] shall be vacated before the expiration of that time." (Emphasis added.) The permissive stay is granted so that "the surety [may receive] temporary relief from the harshness of forfeiture." State v. Hampton, 42 Wash. App. 130, 135, 709 P.2d 1221 (1985), rev'd on other grounds, 107 Wash.2d 403, 728 P.2d 1049 (1986). However, a surety may simply file for vacation of the judgment outright if *704 the judgment will "be vacated before the expiration" of the statutory 60 days.[2] RCW 10.19.100.
¶ 13 When a defendant is returned to custody within the statutory 60 days, the default created by his prior absence has been repaired and there is no need for the bondsmen to request a stay. See Jackschitz, 76 Wash. at 255, 136 P. 132 ("`If the accused... repairs the default as much as is in his power, by appearing at the succeeding term, and submitting himself to the law, the real intention and object of the recognizance are effected, and no injury is done.'" (emphasis added) (quoting Feely, 25 F. Cas. at 1057)).
¶ 14 This is not the first time this court has addressed a surety who failed to request a stay of forfeiture. In State v. Hampton, 107 Wash.2d 403, 408, 728 P.2d 1049 (1986), this court granted full exoneration, minus the cost to the State in apprehending the defendant, to a surety who did not apply for a stay under RCW 10.19.100 and whose defendant was not returned to the state until eight months after his missed sentencing.[3] Significantly, the Court of Appeals decision in Hampton's case addressed the precise issue presented here: the surety's failure to seek a stay of execution.
The State contends that since [the surety] did not seek a stay of execution under RCW 10.19.100, the court did not abuse its discretion in denying [the surety's] motion to vacate the forfeiture. The State would have the court read RCW 10.19.105 as stating that requesting a stay of execution under RCW 10.19.100 is a prerequisite to subsequent ability to challenge the forfeiture. RCW 10.19.100 was intended to provide the surety with temporary relief from the harshness of forfeiture. It is not a prerequisite for later relief As was held in [Jackschitz, 76 Wash. 253, 136 P. 132], the provisions of RCW 10.19.105, then Rem. & Ball.Code § 2233, are not to be construed as limiting the common law power of the court to vacate a forfeiture of bail even after the expiration of the 60-day period. Jackschitz, [76 Wash. at 256, 136 P. 132]. Though [the surety's] motion to vacate was made more than 60 days after the order of forfeiture, [the surety] properly sought redress.
Hampton, 42 Wash.App. at 135-36, 709 P.2d 1221 (emphasis added) (footnote omitted).
¶ 15 The Court of Appeals in Hampton granted the surety partial exoneration, allowing the surety to recover its costs in returning the defendant to the state less the expenses incurred by the State in the same endeavor. Hampton, 107 Wash.2d at 407, 728 P.2d 1049. On review, we granted the surety greater relief and adhered to the statutory formula of the amount of the bond minus the expenses to the State in securing the defendant. Id. at 409, 728 P.2d 1049.
¶ 16 Instead of submitting a stay bond to the clerk of the court, All City mailed an order requesting vacation of the default judgment on December 27, 2005, after the defendant had been returned to custody, and well within the 60 day time frame contemplated by the statute. Because of this filing, we find All City was not required to file a stay of the execution of the default judgment.
¶ 17 The trial court requested All City present evidence on the issue of whether its participation in Mr. Kramer's return satisfied the requirements of RCW 10.19.140. TR at 4-5. The trial court was mainly concerned that All City knew of Kramer's location during his seven day absence but failed to notify law enforcement. All City contends they were attempting daily to negotiate *705 Kramer's peaceable surrender and had arranged to pick him up on the day the Lincoln County Sheriff's Department apprehended him. See CP at 26-28.
¶ 18 In Mullen, 66 Wash.2d at 259, 401 P.2d 991, the State argued as it does here, that the petitioner is not entitled to equitable consideration because "the record shows no effort or assistance on the part of the [petitioner] to return the defendant to the custody of the court." However, in Mullen we held because the "defendant was made available to the court ... only 21 days after his required appearance, irrespective of who was responsible, [the surety] should be held accountable, under these circumstances, only for the costs expended in apprehending and returning the defendant to the custody of the court." Id. (emphasis added).
¶ 19 Our decision in Mullen reinforced the proposition established in Jackschitz that bonds are properly exonerated, minus costs to the State, when a defendant is returned within a reasonable time, to wit, the 60 days contemplated by RCW 10.19.105. Jackschitz, 76 Wash. at 256, 136 P. 132 ("Our construction of the statute relied on is that it undertakes to direct, almost as a matter of right, that a judgment shall be vacated within the sixty-day period, without limiting the common law power of the court in proper cases."). The trial court erred in analyzing All City's actions under section .140. Even though All City failed to request a stay of execution, the defendant's mere seven day absence entitled them to the benefit of the equities as provided for by sections .100 and.105.
¶ 20 We now hold as we did in Mullen, because Kramer was returned to the custody of the court within 60 days, "to carry out the manifest policy of the statutes, [the surety] should have been given the benefit of the equities, as provided in RCW 10.19.105." Mullen, 66 Wash.2d at 259, 401 P.2d 991. Because the State produced Mr. Kramer in court, the default judgment against All City must be vacated.
WE CONCUR: SUSAN OWENS, CHARLES W. JOHNSON, RICHARD B. SANDERS and TOM CHAMBERS, Justices.
FAIRHURST, J. (dissenting).
¶ 21 Under the majority's decision, a surety is now free to ignore, or even be complicit in, a defendant's failure to show up for court-ordered appearances for a 60-day period without concern that its bond moneys will not be returned. The majority's decision rewrites Washington's bail bond statutes and dangerously undercuts the financial incentive for sureties to ensure defendants comply with the terms of bail. In doing so, the majority's decision fails to respect the balance of incentives for sureties spelled out by the legislature in chapter 10.19 RCW and undermines the equitable role of the trial court.
¶ 22 I dissent from the majority's interpretation of our bail bond statute and agree with the Court of Appeals that the trial court did not abuse its discretion when it refused to vacate the default judgment against All City Bail Bonds. I concur with the majority's result to the extent it rejects the Court of Appeals' novel balancing test for partial exoneration of a bail bond.

FACTS
¶ 23 All City is a bail bond agent licensed by the state of Washington. On June 5, 2005, All City posted a $20,000 appearance bond for defendant William Joseph Kramer to secure his presence at all court hearings to answer to the charge of first degree child molestation.
¶ 24 On December 8, 2005, Lincoln County Superior Court issued a bench warrant for Kramer's arrest based on a violation of his conditions of pretrial release. The warrant stated that bail would not be accepted. On Monday, December 19, 2005, Kramer failed to appear for a scheduled 9:30 a.m. hearing. Kramer's attorney was present and confirmed that Kramer was aware of the hearing. Upon motion by the State, the trial court immediately entered a default judgment and order of forfeiture pursuant to RCW 10.19.090.
¶ 25 That same day, Kramer informed All City's agent, Charles Stewart, by telephone *706 that he had missed his hearing, claiming he could not locate his attorney and feared he would be taken into custody. Stewart remained in daily telephone contact with Kramer or his family members from December 19 to 26, 2005,[1] and was aware of Kramer's location throughout. Stewart advised Kramer to turn himself in to either All City or the authorities, but took no further action. At some point in their communications, Kramer requested that he be allowed to remain at large in order to spend Christmas with his family. Stewart agreed, arranging for Kramer to surrender himself to All City on either the evening of December 26, 2005, or the morning of December 27, 2005.[2]
¶ 26 On December 26, 2005, the police apprehended Kramer at the home of Kramer's mother without the assistance of All City. Kramer remained in custody from his apprehension until judgment and sentencing.

ANALYSIS
¶ 27 Our constitution mandates bail in all criminal cases except for capital offenses. WASH. CONST. art. I, § 20. Where the defendant must seek the assistance of a bondsman in posting a bail bond, a surety relationship is formed in which the bondsman is the surety, the defendant is the principal, and the State is the obligee. In re Marriage of Bralley, 70 Wash.App. 646, 652-53, 855 P.2d 1174 (1993). The surety "has a special role in the production and security of the accused. This person is responsible if the accused does not appear at the required time." Id. at 653, 855 P.2d 1174. A surety undertakes a calculated risk that the defendant will not comply with court orders and that the bond will be forfeited. See RCW 10.19.090.
¶ 28 The primary purpose of bail is to secure the appearance of the defendant at all court hearings. State v. Heslin, 63 Wash.2d 957, 960, 389 P.2d 892 (1964). However, "[b]ail is not taken on forfeiture as money is taken for a debt.... There should be no suggestion of bounty or revenue to the state or of punishment to the surety." State v. Jackschitz, 76 Wash. 253, 255, 136 P. 132 (1913). Nevertheless, it is the risk of forfeiture that provides the incentive to the surety to assist in securing the appearance of defendants at court hearings. As we articulated in Jackschitz, "in cases of flight, a recapture may be aided by the bondsmen who, it is presumed, will be moved by an incentive to prevent judgment, or, if it has been entered, to absolve it and to mitigate its penalties." Id. at 256, 136 P. 132.
¶ 29 The legislature balanced the financial risks facing sureties in chapter 10.19 RCW. RCW 10.19.090 contains the general rule mandating bond forfeiture when a defendant fails to appear. Any harshness in this forfeiture rule is tempered by RCW 10.19.105 and.140, which each provide means for sureties to recover bond money even when a defendant initially fails to appear. In addition to the two avenues for bail bond exoneration provided by RCW 10.19.105 and .140, trial courts also retain equitable powers to grant relief in appropriate circumstances.[3] As discussed below, the majority disturbs this scheme by rewriting RCW 10.19.105 and by not giving proper deference to the equitable determination of the trial court.

The bail bond statutes: chapter 10.19 RCW
¶ 30 The legislature's scheme to encourage the giving of bail, while at the same time *707 securing the appearance of the defendant, is clearly articulated in Washington's bail bond statutes. RCW 10.19.090 mandates forfeiture upon the defendant's failure to appear:
In criminal cases where a recognizance for the appearance of any person ... shall have been taken and a default entered, the recognizance shall be declared forfeited by the court, and at the time of adjudging such forfeiture said court shall enter judgment against the principal and sureties named in such recognizance for the sum therein mentioned, and execution may issue thereon the same as upon other judgments.
RCW 10.19.090 anticipates that judgment and forfeiture will occur within 30 days.
¶ 31 RCW 10.19.100 then provides a means to delay and, possibly, prevent execution for those sureties who are willing to post a second bond to secure judgment on the recognizance bond:
The parties, or either of them, against whom such judgment may be entered in the superior or supreme courts, may stay said execution for sixty days by giving a bond with two or more sureties, to be approved by the clerk, conditioned for the payment of such judgment at the expiration of sixty days, unless the same shall be vacated before the expiration of that time.
For those sureties that are willing to take on extra financial risk and post a stay bond under RCW 10.19.100, RCW 10.19.105 allows the forfeiture judgment under RCW 10.19.090 to be vacated if the defendant is returned within 60 days:

If a bond be given and execution stayed, as provided in RCW 10.19.100, and the person for whose appearance such recognizance was given shall be produced in court before the expiration of said period of sixty days, the judge may vacate such judgment upon such terms as may be just and equitable, otherwise execution shall forthwith issue as well against the sureties in the new bond as against the judgment debtors.
(Emphasis added.) For sureties that are not willing to post a stay bond and/or are unable to secure the presence of a defendant within 60 days, return of the bond is still available under RCW 10.19.140 within a 12-month period after forfeiture. RCW 10.19.140 provides:
If a forfeiture has been entered against a person in a criminal case and the person is returned to custody or produced in court within twelve months from the forfeiture, then the full amount of the bond, less any and all costs determined by the court to have been incurred by law enforcement in transporting, locating, apprehending, or processing the return of the person to the jurisdiction of the court, shall be remitted to the surety if the surety was directly responsible for producing the person in court or directly responsible for apprehension of the person by law enforcement.
Under RCW 10.19.140, if the surety is directly responsible for returning the defendant within 12 months, the amount of the bond can be returned to the surety minus any costs that law enforcement may have incurred in assisting in the return of the defendant.[4] If the surety cannot recover under RCW 10.19.105 or RCW 10.19.140, the court still has the discretion to vacate the forfeiture under its inherent equitable authority. Jackschitz, 76 Wash. at 256, 136 P. 132.
¶ 32 In this case, All City chose not to apply for a stay bond under RCW 10.19.100 and is therefore not eligible for relief under RCW 10.19.105. Although All City argued below that it is entitled to relief under RCW 10.19.140, the trial court held All City's telephone conversations with Kramer were not sufficient to find All City directly responsible for Kramer's arrest, and the Court of Appeals affirmed. State v. Kramer, 141 Wash. App. 892, 900, 174 P.3d 1193 (2007). All City did not raise its argument regarding relief under RCW 10.19.140 before this court, so we do not address it. RAP 13.7(b). If All City is due any relief in this case, it must come from the court's inherent equitable authority to exonerate the bond.

*708 The majority misinterprets the statutes

¶ 33 The majority is uncomfortable with the fact that operation of the statutes in this case results in denial of exoneration of the bond. To reach a different result, the majority distorts the language of RCW 10.19.100 and .105. The result is a new bright-line test that dangerously alters the balanced incentives for sureties by giving them a 60-day window in which they are relieved of all obligations to facilitate the return of missing defendants.
¶ 34 Sureties have three different avenues for relief: RCW 10.19.105, .140, and the trial court's equitable powers, discussed below. The plain language of the statute indicates that relief under RCW 10.19.105 is conditioned on posting a stay bond under RCW 10.19.100. RCW 10.19.105 ("If a bond be given and execution stayed, as provided in RCW 10.19.100...."). The majority asserts that the clear condition imposed by RCW 10.19.105 is contradicted by the language of RCW 10.19.100. Majority at 703-04. The majority interprets RCW 10.19.100 to mean "a surety `may stay said execution ... by giving a bond ... unless [the default judgment] shall be vacated before the expiration of that time.'" Majority at 703-04 (alterations in original). This interpretation of RCW 10.19.100 suggests that a court can vacate judgment before a stay bond has been posted. In light of its interpretation of RCW 10.19.100, the majority concludes that relief under RCW 10.19.105 is not conditioned on posting a stay bond and seeking a stay.
¶ 35 However, the majority's interpretation gives rise to the bizarre implication that a surety may not stay execution of the judgment if the judgment will be vacated before the stay period ends. This result is absurd not only because it would prevent the most deserving sureties from receiving a stay, but also because there is no method for determining what judgments will and will not be vacated within the stay period. The majority even admits that its interpretation may require that a bond be filed, and a stay granted, only after 60 days have passed from the date of forfeiture. Majority at 706 n. 2.
¶ 36 The statute is amenable to a much more reasonable interpretation. The majority's error is in asserting that the language "unless the same shall be vacated before the expiration of that time" applies to the language "may stay said execution." RCW 10.19.100 provides for the giving of a bond "conditioned for the payment of such judgment at the expiration of sixty days, unless the same shall be vacated before the expiration of that time." If we interpret "unless the same shall be vacated before the expiration of that time" to apply to the clause that immediately precedes it, then the language simply becomes part of the condition of the stay bond. Consequently, RCW 10.19.100 would simply mean that a surety may stay execution of a judgment by posting a stay bond, and the stay bond will be used to satisfy the judgment after the stay ends if the judgment is not vacated during the stay, but the stay bond will not be used to satisfy the judgment if the judgment is vacated during the stay. Not only does this interpretation have the benefit of avoiding absurd results, it also has the benefit of allowing RCW 10.19.100 to work in harmony with RCW 10.19.105. Because this interpretation of RCW 10.19.100 envisions that any vacation of a judgment will take place during the stay, it is consistent with the interpretation that relief under RCW 10.19.105 is available only when "a bond be given and execution stayed."
¶ 37 The majority attempts to bolster its interpretation of RCW 10.19.105 by quoting heavily from the Court of Appeals opinion in State v. Hampton, 42 Wash.App. 130, 709 P.2d 1221 (1985), rev'd, 107 Wash.2d 403, 728 P.2d 1049 (1986). However, Hampton does not stand for the proposition that relief is available under RCW 10.19.105, even when a stay bond has not been posted. Hampton stands for the proposition that failure to meet the requirements of RCW 10.19.105 does not foreclose relief under a court's inherent equitable power. Id. at 135-36, 709 P.2d 1221.
¶ 38 The majority correctly asserts that a surety may skip seeking a stay and may file directly for vacation of a judgment outright. Majority at 703-04. However, a surety that does so is proceeding under RCW 10.19.140 or appealing to the equitable powers of the *709 trial court, not proceeding under RCW 10.19.105, which, as explained above, is available only in cases where the surety posts a stay bond under RCW 10.19.100. All City already dropped its appeal of its eligibility for relief under RCW 10.19.140. The majority should focus on the court's inherent equitable authority instead of stretching RCW 10.19.105 to reach its result.
¶ 39 The majority's new rule reduces the financial incentives our legislature provided to sureties by giving them a 60-day window in which they are relieved of all obligations to facilitate the return of missing defendants. This kind of reduction in the financial incentives facing sureties is the same kind of dangerous reduction in balanced incentives that was vetoed in the 1986 legislative session. In 1986, the legislature attempted to amend RCW 10.19.090 to allow trial courts to reduce the amount of the bond at the time of forfeiture. LAWS OF 1986, ch. 322, § 2. The governor vetoed this provision stating that "[r]educing the face value of the bond when the defendant fails to appear could undermine the incentive to bring defendants to justice, thereby weakening the criminal justice process." Id. (governor's explanation of partial vetoes).
¶ 40 Our bail bond statutes, as written, do not provide the relief the majority seeks in this case. If the majority believes All City is entitled to relief under the unique facts of this case, it should address its arguments to the trial court's inherent equitable powers to facilitate bail, and not needlessly reinterpret our bail bond statutes.

Equitable relief
¶ 41 Trial courts have discretion to grant relief from forfeiture where sureties are not entitled to relief under chapter 10.19 RCW, but where, under the circumstances of the case, relief would promote the giving of bail as well as bail's purpose of securing the presence of the defendant. State v. Sullivan, 172 Wash. 530, 535, 22 P.2d 56 (1933); State v. Olson, 127 Wash. 300, 302, 220 P. 776 (1923). This equitable relief is within the inherent discretionary power of the trial court, which should be exercised liberally in order
"that the state may be relieved of the burden of keeping an accused person; that the innocent shall not be confined pending a trial and formal acquittal; that, in cases of flight, a recapture may be aided by the bondsmen who, it is presumed, will be moved by an incentive to prevent judgment, or, if it has been entered, to absolve it and to mitigate its penalties."
State v. Ringrose, 71 Wash.2d 99, 102, 426 P.2d 848 (1967) (quoting Jackschitz, 76 Wash. at 256, 136 P. 132). The trial court must, therefore, use its equitable powers to encourage the giving of a bond but bear in mind that the purpose of the bond is to secure the defendant's appearance at court. "That discretion, however, is not to be arbitrarily exercised. It is a judicial discretion." State v. O'Day, 36 Wash.2d 146, 152, 216 P.2d 732 (1950) (quoting State v. Johnson, 69 Wash. 612, 616, 126 P. 56 (1912)).
The test, in determining the question whether the trial court erred in refusing to vacate the forfeiture of a bail bond, "is not alone one of time whether prompt or otherwise; nor good faith, or the lack of it; nor compensation, or lack of it, to the bondsmen or surety; nor whether there are organized, undisclosed principals in procuring the business of furnishing bail" but "is the judicial discretion of the trial judge, who, in formulating and arriving at his judgment, may look to all such things."
State v. Van Wagner, 16 Wash.2d 54, 62, 132 P.2d 359 (1942) (quoting State v. Jimas, 166 Wash. 356, 360, 7 P.2d 15 (1932)).
¶ 42 In determining whether equitable relief is appropriate Washington courts have looked primarily to the reasons for nonappearance and the actions of the surety in returning the defendant to the custody of the court. We have considered whether the defendant acted in good faith by surrendering,[5] the diligence of the surety,[6] the defendant's *710 reason for failing to appear,[7] whether the surety and defendant colluded or "trifled with the court,"[8] whether law enforcement or the surety secured the defendant's appearance,[9] and whether the defendant was produced within a reasonable time.[10] In no case, however, have we found the trial court abused its discretion by denying relief based solely on the length of time between the defendant's failure to appear and his return to custody. Unfortunately, that is the only factor the majority considers when it determines that All City is entitled to return of the bond.
¶ 43 Although the majority bases All City's claim to equitable relief on the short period of time during which Kramer remained at large before he was located and arrested by local law enforcement, other facts do not weigh in All City's favor. Kramer did not have a good faith reason for his failure to appear. He did not attend his hearing because a bench warrant had been issued for his arrest, and Kramer feared he would be taken into custody. Kramer did not surrender himself to the court. Although All City spoke with Kramer daily and knew his location, it took no action other than advising Kramer to turn himself in and advising his mother to cooperate with police. Kramer and All City agreed together that Kramer could remain at large until after Christmas. All City received notice of forfeiture on December 20, 2005, and had an opportunity to request a stay. Kramer was taken into custody by law enforcement without the assistance of All City. Both the Court of Appeals and the trial court were troubled by the fact that All City appeared to be usurping the role of the court by deciding when Kramer should surrender to the court. Kramer, 141 Wash.App. at 898, 174 P.3d 1193; Report of Proceeding at 8, 10-11, 13-14, 18.
¶ 44 The majority relies heavily on State v. Mullen, 66 Wash.2d 255, 401 P.2d 991 (1965). In Mullen, we held it was an abuse of discretion for a trial court to refuse to vacate forfeiture of a bond when a defendant was returned to custody 21 days after his scheduled appearance. Id. at 258-59, 401 P.2d 991. Our opinion in Mullen is silent as to whether the surety posted a stay bond in that case. See id. at 255-59, 401 P.2d 991. We held the trial court abused its discretion even though there was no evidence that the surety took any action to secure Mullen's return. Id. at 259, 401 P.2d 991. However, there is a big difference between this situation and the one in Mullen. There was no evidence that the surety in Mullen had knowledge of the location of the principal when it failed to act. Also, in Mullen, the surety did not actively agree to delay capturing the principal. This case is distinguishable.
¶ 45 Although our bail policy is designed to encourage the giving of bail, it is based upon the assumption that the surety will be diligent to prevent judgment by securing the appearance of the defendant. Jackschitz, 76 Wash. at 256, 136 P. 132. All City could have requested a stay, but did not. All City knew Kramer's location and could have returned him to custody, but did not. All City could have notified law enforcement of Kramer's location, but did not. Most importantly, All City did not have to agree to delay Kramer's capture. Having failed to act on its own behalf to preserve the bond, All City argues that the trial court abused its discretion by refusing exoneration. I disagree. The trial court had tenable grounds for denying relief and, therefore, did not abuse its discretion. *711 Hampton, 107 Wash.2d at 408-09, 728 P.2d 1049 ("`A trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons.'" (quoting Davis v. Globe Mach. Mfg. Co., 102 Wash.2d 68, 77, 684 P.2d 692 (1984))).

CONCLUSION
¶ 46 For the reasons articulated above, I dissent from the majority's interpretation of our bail bond statutes and agree with the Court of Appeals that the trial court did not abuse its discretion when it refused to vacate the default judgment against All City. If the majority believes there should be a different result in this case, it should focus on a proper review of the trial court's equitable discretion and not disrupt Washington's bail bond statutes.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, and JAMES M. JOHNSON and DEBRA L. STEPHENS, Justices.
NOTES
[1] We have previously referred to this "new bond" as a "stay bond." Olson, 127 Wash. at 301, 220 P. 776.
[2] Sections .100 and .105 may even be read to say that a bond may be filed only after 60 days from the date of the judgment of forfeiture and then only if the judgment has not already been vacated. See RCW 10.19.100 ("may [file a bond and apply for a stay] unless [the forfeiture will be vacated within sixty days]" (emphasis added)). However, since no stay bond was filed in this case, the question of whether it would have been permissible to file said bond before 60 days from the date of the judgment of forfeiture is not before us.
[3] The facts recited in our opinion in Hampton do not indicate whether or not the surety had petitioned for a stay of execution under RCW 10.19.100. However, it is clear from the Court of Appeals opinion in that case that no stay was sought. Hampton, 42 Wash.App. at 135-36, 709 P.2d 1221.
[1] All City submitted a declaration from Stewart describing his communications with Kramer while Kramer was at large. Clerk's Papers (CP) at 26-28. The State does not dispute All City's statement of the facts. Report of Proceedings at 5.
[2] As Stewart stated in his declaration: "From December 19, 2005, until December 26, 2005, I was in daily contact with the Defendant and the Defendant's family. The Defendant requested that he be allowed to spend Christmas with his family, and stated he would surrender himself immediately after Christmas.... The Defendant agreed that he would meet me either in the evening of December 26, 2005, or in the morning of December 27, 2005, to surrender himself to my custody so that I could transport him to the jail." CP at 27.
[3] In addition, RCW 10.19.090 provides for exoneration of a bond if the surety is not notified in writing of the failure of the defendant to appear. ("If the surety is not notified by the court in writing of the unexplained failure of the defendant to appear within thirty days of the date for appearance, then the forfeiture shall be null and void and the recognizance exonerated.")
[4] RCW 10.19.140, which was enacted in 1986, specifically requires that the surety be "directly responsible for producing the person in court or directly responsible for apprehension of the person by law enforcement."
[5] Johnson, 69 Wash. at 616, 126 P. 56; Jackschitz, 76 Wash. at 254, 136 P. 132; O'Day, 36 Wash.2d at 159, 216 P.2d 732; Van Wagner, 16 Wash.2d at 62, 132 P.2d 359.
[6] Johnson, 69 Wash. at 616, 126 P. 56; Jackschitz, 76 Wash. at 254, 136 P. 132; Olson 127 Wash. at 301, 220 P. 776; O'Day, 36 Wash.2d at 159, 216 P.2d 732; Jimas, 166 Wash. at 358, 361, 7 P.2d 15; Heslin, 63 Wash.2d 957, 389 P.2d 892; State v. Ohm, 145 Wash. 197, 198, 259 P. 382(1927).
[7] Johnson, 69 Wash. at 614, 126 P. 56; Olson, 127 Wash. at 302, 220 P. 776; Van Wagner, 16 Wash.2d at 55, 132 P.2d 359; O'Day, 36 Wash.2d at 150, 216 P.2d 732; Jackschitz, 76 Wash. at 255, 136 P. 132; Sullivan, 172 Wash. at 535, 22 P.2d 56.
[8] Johnson, 69 Wash. at 615, 126 P. 56; Jimas, 166 Wash. at 358, 7 P.2d 15.
[9] Johnson, 69 Wash. at 614, 126 P. 56; Jackschitz, 76 Wash. at 254, 136 P. 132; Olson, 127 Wash. at 300, 220 P. 776; Van Wagner, 16 Wash.2d at 55, 132 P.2d 359; O'Day, 36 Wash.2d at 159, 216 P.2d 732.
[10] Johnson, 69 Wash. at 614, 126 P. 56; State v. Mullen, 66 Wash.2d 255, 258-59, 401 P.2d 991 (1965).