IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80446-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH C. ADAMS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Defendant, | ) | |
| | ) | |
| PACIFIC NORTHWEST BONDING | ) | |
| COMPANY, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — A trial court has broad discretion whether to exonerate a forfeited bail bond on purely equitable grounds. The trial court denied Pacific Northwest Bonding Company's (PNW) request to exonerate a forfeited bail bond. Because the trial court adequately considered the equitable grounds argued by PNW, the court did not abuse its discretion.

Therefore, we affirm.

FACTS

On June 11, 2018, PNW issued a $50,000 bail bond on behalf of Joseph Adams. After Adams was released from custody, PNW placed an ankle monitor on Adams to track his location. On August 18, 2018, Adams cut off his ankle

monitor and fled. On August 29, 2018, Adams failed to appear for his case setting hearing. On September 5, 2018, the State notified PNW that Adams had failed to appear and that the State would move for forfeiture of the bail bond. On September 14, 2018, the trial court issued a judgment for forfeiture of the bail bond, effective November 12, 2018. In the meantime, PNW maintained contact with law enforcement officials, assembled a recovery team, communicated with Adams's family, triangulated his phone, and administered surveillance at his home and work. On December 19, 2018, 96 days after the State moved for forfeiture of the bail bond, the Tacoma Police Department apprehended Adams for committing another crime.

On August 8, 2019, the trial court denied PNW's motion to exonerate the bail bond.

PNW appeals.

## ANALYSIS

PNW concedes that it did not satisfy the statutory grounds to exonerate the bail bond. And the parties agree that the court can exonerate a bail bond on equitable grounds. PNW argues the court abused its discretion by "failing to adequately consider PNW's equitable rights"[1] when denying its motion to exonerate the forfeited bail bond.

---

[1] Appellant's Br. at 10.

We review a trial court's decision to exonerate a bail bond for abuse of discretion.[2] "'A trial court abuses its discretion when its exercise of discretion is based upon untenable grounds or reasons.'"[3]

PNW suggests that in determining whether equitable relief is appropriate "Washington courts have looked primarily to the reasons for nonappearance and the actions of the surety in returning the defendant to the custody of the court."[4] PNW contends the court abused its discretion by focusing on the statutory grounds for exoneration and not considering the equitable "test factors." We conclude the trial court has extremely broad discretion to consider equitable grounds for exoneration and PNW fails to establish an abuse of discretion.

The bail bond statutes provide a framework for the trial court to determine whether a case warrants a decision based in equity. RCW 10.19.140 provides that if forfeiture was entered against a person and if that person was apprehended within 12 months from when the forfeiture was ordered, the surety can recover "[I]f the surety was directly responsible . . . for apprehension of the person by law enforcement." RCW 10.19.105 states that if a bond is given and execution stayed and the person is produced in court before the expiration of the 60-day stay, "the judge may vacate such judgment upon such terms as may be just and equitable."

---

[2] In re Marriage of Bralley, 70 Wn. App. 646, 651, 855 P.2d 1174 (1993).

[3] State v. Hampton, 107 Wn.2d 403, 408-09, 728 P.2d 1049 (1986) (quoting Davis v. Globe Machine Mfg. Co., 102 Wn.2d 68, 77, 684 P.2d 692 (1984)).

[4] Appellant's Br. at 11.

"It is the policy of the law to encourage the giving of bail in bailable offenses, and for this reason the courts are lenient in relieving bondsmen from a forfeiture, where they have been diligent in returning the person . . . to the processes of the courts."[5]

> The test, in determining the question whether the trial court erred in refusing to vacate the forfeiture of a bail bond, "is not alone one of time whether prompt or otherwise; nor good faith, or the lack of it; nor compensation, or lack of it, to the bondsmen or surety; nor whether there are organized, undisclosed principals in procuring the business of furnishing bail" but "is the judicial discretion of the trial judge, who, in formulating and arriving at his judgment, may look to all such things, if in the case, and others, if there are any, with the understanding, . . . that in 'the absence of evidence of flagrant abuse the appellate court will not interfere."[6]

"[A]fter expiration of the 60-day stay of execution period, the trial court exercising its inherent discretion has been affirmed in every instance whether or not the motion to vacate had been granted or denied."[7]

Two cases illustrate the range of discretion of the court. In State v. Molina, the defendant failed to appear for his arraignment.[8] The trial court moved to forfeit the bail bond, but the court granted the bail bond company a continuance.[9] The bail bond company was unable to locate the defendant.[10] The trial court ordered

---

[5] State v. Ohm, 145 Wash. 197, 198, 259 P. 382 (1927).

[6] State v. Molina, 8 Wn. App. 551, 552, 507 P.2d 909 (1973) (quoting State v. Van Wagner, 16 Wn.2d 54, 62-63, 132 P.2d 359 (1942)).

[7] Id. at 554 (citing cases).

[8] 8 Wn. App. 551, 553, 507 P.2d 909 (1973).

[9] Id.

[10] Id.

forfeiture of the bail bond, which was stayed for 60 days.[11]  Months after the 60-day stay expired, the defendant was apprehended by law enforcement.[12]  Division Three of this court affirmed the trial court's denial of the bail bond company's motion to exonerate the forfeiture of the bail bond based upon the court's inherent discretion.[13]  The court considered various facts in rendering its decision:  that the defendant was taken into custody after the 60-day execution period, that the defendant was apprehended by law enforcement, and that neither the defendant nor the bond company offered any excuse for the defendant's failure to appear.[14]

In State v. Kramer, the defendant failed to appear for a court hearing.[15]  Seven days later, law enforcement officials apprehended him.[16]  During the defendant's absence, the bail bond company remained in contact with the defendant and encouraged him to turn himself in to law enforcement.[17]  The trial court denied the bail bond company's motion to exonerate the forfeiture of the bail bond.[18]  The Supreme Court held that the exoneration of the bail bond should be granted because the defendant was apprehended within the 60-day period.[19]  The

---

[11] Id.

[12] Id.

[13] Id. at 554-55.

[14] Id. at 554.

[15] 167 Wn.2d 548, 551, 219 P.3d 700 (2009).

[16] Id.

[17] Id.

[18] Id.

[19] Id. at 558-59.

court reasoned that because the defendant was apprehended within the 60-day period, the bail bond company should be "given the benefit of the equities."[20]

This case is more like Molina and less like Kramer. PNW did not remain in contact with Adams once he fled, PNW was unable to apprehend Adams, and PNW did not offer any excuse for Adams's failure to appear. Because Adams was apprehended after the 60-day statutory period expired and the court adequately considered the equitable grounds argued by PNW, the trial court was not compelled to exonerate the bail bond based upon the "benefit of the equities" that the court afforded the bail bond company in Kramer.[21]

PNW also relies on State v. Johnson,[22] suggesting that the trial court must consider a specific set of test factors before it can deny a motion to exonerate a bail bond on equitable grounds. But the holding in Johnson is not so rigid.

In Johnson, the defendant failed to appear for trial.[23] The trial court entered a judgment against the surety, which was stayed for 60 days.[24] The bonding company diligently searched for the defendant.[25] Within the 60-day stay of execution period, the defendant voluntarily surrendered herself to the bonding

---

[20] Id.

[21] Id.

[22] 69 Wash. 612, 126 P. 56 (1912).

[23] Id. at 614.

[24] Id.

[25] Id. at 615.

company.[26]  The Supreme Court held that the motion to exonerate the forfeiture of the bail bond should be granted.[27]  The court's decision was based upon several factors: the bonding company's diligence, the defendant's good faith in surrendering, and the fact that the defendant was returned within the 60-day period.[28]  But Johnson does not purport to define a fixed set of equitable test factors.  Rather, the court has broad discretion to generally consider the equities of the situation.[29]

To the extent that PNW suggests the trial court failed to adequately consider PNW's equitable arguments and articulate its rationale for rejecting them, we are not persuaded.  During oral argument on its motion, PNW argued equitable principles entitled it to relief.  The trial court acknowledged that there could be equitable grounds to exonerate a bail bond but was not persuaded by the grounds offered by PNW "in this case":

> This statute is very clear.  If you are directly responsible for producing the person in court, you are entitled to exoneration, or if you are directly responsible for apprehension of the person by law enforcement, and that is so we don't just have essentially regrets

---

[26] Id.

[27] Id. at 616-17.

[28] Id. at 616.

[29] See State v. Mullen, 66 Wn.2d 255, 258-59, 401 P.2d 991 (1965) (the Supreme Court held that because the defendant was apprehended just 21 days after the trial court entered forfeiture of the bail bond, regardless of who was responsible for the defendant's apprehension, the bail bond company should be given the benefit of the equities); State v. Jakshitz, 76 Wash. 253, 254-56, 136 P. 132 (1913) (the Supreme Court held that because of the bail bond company's continuous efforts in convincing the defendant to voluntarily surrender, the bail bond company was entitled to equitable consideration).

about the business decisions that we made in bonding somebody out.

   The court does not find the argument for equitable relief in this case persuasive.  This is the decision; this is the work of the bonding company.  These are the risks that they take that are inherently part of the cost of doing business, so the motion is denied.[30]

PNW argues the decision did not reveal any "analysis or comment" why the court rejected its equitable arguments.[31]   Although the court did not state a detailed rationale, in addition to the court's oral decision, its questions during argument revealed its consideration of and concerns about the proffered equitable grounds argued by PNW.  For example, PNW's counsel suggested that the bonding company worked closely with law enforcement and had very good information about Adams hiding in his aunt's driveway.  The court asked:  "Are you saying that the bonding company provided that information?," and counsel responded "No, I am not saying that."[32]  The court ultimately concluded that equitable grounds were not persuasive and that PNW's exposure was the inherent risk undertaken by a bonding company.[33]

---

[30] Id. at 14-15 (emphasis added).

[31] Appellant's Br. at 9.  See State v. Hampton, 107 Wn.2d 403, 409, 728 P.2d 1049 (1986) (the Supreme Court held that the trial court abused its discretion in denying a bail bond company's motion to exonerate the bail bond because the trial court gave no reasons at all for its decision).

[32] Report of Proceedings (Aug. 8, 2019) at 9.

[33] PNW also argues that the public policies supporting exoneration on equitable grounds are frustrated "if PNW is held to strict compliance" with the statutes governing exoneration.  Appellant's Br. at 16. But, as discussed, the court did consider PNW's equitable arguments grounded in those public policies.

Here, the trial court exercised its discretion after considering the equitable grounds argued by PNW, the risks inherent in PNW's business decision, the information PNW had regarding Adams's whereabouts, and the specific facts that led to Adams' apprehension. Because broad discretion is afforded to the trial court regarding equitable grounds for exoneration and the court adequately considered the equities and articulated its decision, we affirm.

_____

WE CONCUR:

_____     _____

9